WALSH v. ATLANTIC COAST LINE R. CO. (two cases).

(District Court, D. Massachusetts. February 19, 1916.)

Nos. 679, 680.

1. COURTS ⬤274—FOREIGN CORPORATIONS—JURISDICTION OF SUIT AGAINST— "DOING BUSINESS" IN STATE.

A Virginia railroad company with lines in the Southern States, but maintaining an office in Boston, for which it paid a substantial rent, with an office force in charge of a salaried agent, advertised as its New England agent, through which office it solicited business and arranged for transportation of passengers and freight over its lines, held to be "doing business" within the district of Massachusetts, and subject to suit there on a claim for injury to a passenger.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. COURTS ⬤344—PROCESS—SUFFICIENCY OF SERVICE—FOREIGN CORPORATIONS.

Where a foreign corporation is doing business within the district, service upon it which would be good under the state law is sufficient in the federal court.

3. CORPORATIONS ⬤668(4)—SUFFICIENCY OF SERVICE—FOREIGN CORPORATIONS.

Under St. Mass. 1913, c. 257, where a foreign corporation doing business in the state has a usual place of business there, service in an action against it may be made upon the person in charge.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Actions by Gertrude Walsh and by Alfred E. Walsh against the Atlantic Coast Line Railroad Company. On motions to quash service, and to dismiss for want of jurisdiction over defendant. Denied.

Hurlburt, Jones & Cabot and Cunningham & Ronan, all of Boston, Mass., for plaintiffs.

Putnam, Putnam & Bell and Arthur F. Ray, all of Boston, Mass., specially, for defendant.

MORTON, District Judge. These are two actions at law begun by writs issued out of this court. That by Mrs. Walsh is to recover damages for personal injuries received by her in the state of Florida through the alleged negligence of the defendant, and that by her husband is to recover for loss of consortium. The writs were served by delivering this summons and attested copy of each writ "to J. H. Johnson, New England agent of said corporation, in hand, at its usual place of business, 248 Washington street, Boston" (marshal's return). The defendant has filed a motion "to vacate and quash the plaintiff's alleged service of the writ, * * * and to dismiss said writ, for want of jurisdiction over the person of said defendant," for certain reasons therein alleged; the principal ones being that the defendant is a Virginia corporation, and at the time of the alleged service was not present, nor doing business within this district, nor subject to service here, and that Johnson at that time was not "such an agent of the defendant as to permit service upon the defendant by delivering an original summons of the writ * * * to him, * * * and that no due service has been made on the defendant." Of course, under the Massachusetts practice, a motion to dismiss is properly used only with reference to defects or lack of jurisdiction which appear upon the face of the papers. This motion is in effect a plea in abatement; it has been treated as such by the parties; and I shall deal with it in the same way. There was a hearing upon it before me, at which witnesses testified orally, and documentary evidence was introduced.

The material facts are as follows:

The plaintiffs are residents and citizens of Massachusetts; the defendant is a Virginia corporation, as alleged in the writ. It owns and operates a railroad in certain of the Southern States, no part of which comes into Massachusetts. It does not own or operate any railroad or transport any passengers or freight within this state. For about 20 years Johnson has been New England agent for the Atlantic Coast Line (which is a combination of the freight departments of the defendant company and of the Merchants' & Miners' Transportation Company), and has also been New England agent of the defendant for the solicitation of passengers; his duty being to try to get passengers to travel upon the defendant's line. In connection with this work, the defendant itself hired, under a written lease from one Marsters to it, part of a shop on Washington street, Boston, paying therefor $3,300 a year rent. On the window of this shop is a prominent sign, bearing the words "Atlantic Coast Line"; other signs there bear the words "Tickets" and "Freight." Johnson paid the run-

ning expenses of this office out of money sent to him by the defend-- ant for that purpose, including the pay of certain employés, whom he hired and discharged on orders from the defendant's home office. He kept no books for the defendant, and no bank account was here kept in its name. At the time of the service upon him, he had no tickets of the defendant for sale. The defendant paid him a monthly salary, and he did not receive any commissions on the business which he procured. He was employed to drum up trade, both freight and passenger, for the defendant.

When persons came there to buy tickets, Johnson sent to one of the local railroads and purchased the tickets on his credit, or that of the defendant company, delivering the tickets to the passenger, and paid the local road for them. Receipts for deposits for tickets taken by him were made on a blank having across the end:

> "Atlantic Coast Line R. R. Co.,
> "248 Washington Street,
> "J. H. Johnson, N. E. Agent."

—and were signed "J. H. Johnson, N. E. A." (i. e., "New England Agent"). He gave to the local railroad from which he obtained tickets an I. O. U., signed "J. H. Johnson, N. E. A." He sold tickets on the defendant's railroad, as well as connecting lines, which he obtained in this way. He did not, except in a few unusual cases, issue bills of lading for freight. Those were regularly issued by the Merchants' & Miners' Transportation Company, upon a form which bore in conspicuous letters "Atlantic Coast Line," and also bore "J. H. Johnson, New England Agent, 248 Washington Street, Boston." Blank forms of these bills of lading were kept at the Washington street office or shop; and there was also kept at the same place a supply of the defendant's time-tables, on which Johnson's name appeared as "New England Agent." It was not explicitly proved that the form of receipt, or I. O. U., used by Johnson, was known to, or approved by, the defendant; but Johnson testified that he had done business in the same way for more than 20 years, that the way he did business was the general way of doing it in other places, that he thought the defendant must know about it, and that the defendant had never objected to it. He impressed me as being a truthful and accurate witness, and I see no reason to doubt that the facts are as stated in his testimony. Up to January 1, 1915, there had been on sale in Johnson's office mileage books of the defendant company; but on that date, owing to objections raised by the New England railroads, their sale was withdrawn; and at the time of the service of the writ, August 30, 1915, there were, as above stated, no tickets on sale by Johnson. In December, 1914, one of the traveling auditors of the defendant had called at Johnson's office.

Johnson's activities for the defendant were naturally confined to matters in which it was interested, arising in that part of New England of which Boston is the business center. It is not alleged, and does not appear, that he sold the tickets or had anything to do with the contract of transportation under which the plaintiff was riding when

injured, or that said contract was made in this state. Except as to the matters above stated and those naturally connected therewith, Johnson was not, as between him and the defendant, authorized to represent it, and he had no express authority from it to receive service of process.

Two questions are presented:

(1) Was the defendant corporation within this jurisdiction so as to be subject to suit here?

(2) Was the summons served upon its authorized agent?

See St. Louis, etc., Ry. Co. v. Alexander, 227 U. S. 218, 226, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; Connecticut Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, 610, 19 Sup. Ct. 308, 43 L. Ed. 569.

[1] As to the first question: As the jurisdictional requirements for federal courts cannot be affected by state statutes, this question is to be determined upon the federal statutes and decisions. Mechanical Appliance Co. v. Castleman, 215 U. S. 437, 30 Sup. Ct. 125, 54 L. Ed. 272. Jurisdiction, as to the points under discussion, depends on the presence of the defendant within the territorial limits of the court's power. In cases of corporations, it was at first held that they were so present only in the state where they were organized; but this view no longer prevails, and they are now held to be present wherever they are sufficiently engaged in business and are represented by an agent competent to receive service of process upon them. St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222; Riverside Mills v. Menefee, 237 U. S. 189, 35 Sup. Ct. 579, 59 L. Ed. 910.

How far it is necessary that a foreign corporation should engage in business in a given district or state, in order to be subject, generally, to the jurisdiction of the courts there, is somewhat uncertain. The Supreme Court has expressly declined to establish any general rule and has said that every case must turn upon its own facts. In a general way it may be said that the—

"business must be such in character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process." Day, J., St. Louis S. W. Ry. Co. v. Alexander, supra.

See, too, Washington Virginia Ry. Co. v. Real Estate Trust Co., 238 U. S. 185, 186, 35 Sup. Ct. 818, 59 L. Ed. 1262.

It has been held that a corporation which did any business whatever in a district or state had submitted itself generally to that jurisdiction (Beale on Foreign Corporations [1st Ed.] § 280, collecting authorities); but the better opinion seems to be that there is necessarily some relationship between the extent of business done and the extent of jurisdiction acquired, and I think that this is the view on which the decision in St. Louis, etc., Ry. Co. v. Alexander, supra, proceeds. See, too, Boultbee, Adm'x, v. International Paper Co. (C. C. A. 1st Cir., Feb. 10, 1916), 229 Fed. 951, 144 C. C. A. 233. It is, however, clear that jurisdiction is not limited to business done by the corporation within the district or state; the liability to suit depends not upon

the situs or character of the business out of which the litigation arises, but upon the fact that the corporation is present and therefore amenable to process. Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964.

In this case the defendant was maintaining an office on one of the principal streets of Boston, for which it was paying a very substantial rent; it kept there an agent who was under salary, and whom it advertised as its "New England agent"; it also hired and paid an office force to transact its business, through this office and force; it solicited business and arranged for the transportation of persons and freight over it lines. The business carried on at the Washington street office was not Mr. Johnson's business; it was the business of the defendant. The cause of action here alleged arose out of the defendant's undertaking to transport the plaintiff as a passenger. While it was not transporting passengers in New England, it was soliciting that sort of business here, and was making contracts in relation thereto. Business evidently of a pretty wide scope, and—to judge from the rent paid and the office force maintained—of substantial volume, between the defendant, on the one side, and passengers and shippers of freight, on the other, was transacted through the Washington street office. The plaintiff's claim arose out of that sort of business.

As to such controversies as might naturally be expected to arise, from time to time, between the defendant and persons with whom it did business, out of transactions of the same general character as Johnson was authorized to enter into here on its account, the defendant must, I think, be held to have submitted itself to this jurisdiction. International Harvester Co. v. Kentucky, 234 U. S. 579, 589, 34 Sup. Ct. 944, 58 L. Ed. 1479; Newby v. Von Offen, L. R. 7 Q. B. 293, 296.

[2] As to (2): There remains the question whether service upon Johnson was sufficient service upon the defendant. As the defendant was present within the district, service which would be sufficient under the state law is sufficient in this court. Ex parte Schollenberger, 96 U. S. 369, 24 L. Ed. 853; Barron S. S. Co. v. Kane, supra.

[3] Under the Massachusetts statutes (St. 1913, c. 257), service of process in an action against a foreign corporation having a usual place of business in this state, or which is engaged in soliciting business here, may be made by leaving the summons with the agent who has charge of the business. Johnson was concededly in charge of such business as the defendant did here. In St. Louis, etc., Ry. Co. v. Alexander, supra, service under a New York statute is somewhat analogous to the Massachusetts statute here in question, but limited to causes of action arising on transactions in that state, was approved by the Supreme Court. This Massachusetts statute is explicitly restricted to foreign corporations and does not apply to natural process. It is plainly an attempt on the part of the state of Massachusetts to regulate foreign corporations doing business within its territory, and as such it seems to me to be within the power of the state and to be valid. A similar conclusion as to it was reached by Judge Wait in Reynolds v. Missouri, Kansas & Texas Ry. Company et al., Massachusetts Superior Court, Suffolk County, 1915. Johnson was therefore a proper

person upon whom service against the defendant could be made. On all the evidence, I find and rule that the defendant was within this jurisdiction, and the service was good.

Motion denied.