DAVIS v. BALTIMORE & O. R. CO.

(District Court, D. Massachusetts. February 11, 1919.)

No. 932.

1. COURTS ⬥323—JURISDICTION OF FEDERAL COURTS—FRAUDULENT REMOVAL
   INTO DISTRICT.
   The burden rests upon a defendant to prove that the removal of plain-
   tiff from one state to another was for the purpose of conferring jurisdic-
   tion on the federal court in that state.
2. COURTS ⬥274—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT—COR-
   PORATIONS—"DOING BUSINESS IN DISTRICT"—"PRESENT IN DISTRICT."
   A railroad company, which operates no line of road within a federal dis-
   trict, but merely maintains an office therein for solicitation of passenger
   and freight business, paying the rent and salaries of the employés, held
   not doing business nor "present in the district," in such sense as to be sub-
   ject to suit in the federal court therein.
   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Doing Business.]

At Law.   Action by Earl A. Davis against the Baltimore & Ohio
Railroad Company.   On plea in abatement.   Plea sustained.

Nathan B. Bidwell and John T. Wheelwright, both of Boston, Mass.,
for plaintiff.

Frederick Foster, of Boston, Mass., for defendant (specially).

MORTON, District Judge.   The plaintiff brought this action at law
against the defendant to recover damages for loss of consortium
through personal injuries sustained by his wife while a passenger in the
defendant's railroad train in the state of West Virginia.   Service was
made on "Edwin E. Baekey, New England passenger agent and in
charge of its (defendant's) business at Boston in said district" (mar-
shal's return).   The defendant has appeared specially, and has pleaded
(1) that the plaintiff was not a citizen and resident of Massachusetts
at the time when suit was brought; and (2) that the defendant was
not doing business, nor legally found, within this district at that time,
and that the agent upon whom service was made was not authorized to
receive service of process against it.   The matter was heard by the
court on oral and documentary evidence.

[1] Upon the first question, viz., whether the plaintiff was a citizen
and resident of Massachusetts, judgment was given orally at the con-
clusion of the arguments, substantially as follows:

"As to the question of diversity of citizenship, the test is whether it existed
at the time when the suit was brought, namely, on October 29, 1917.   Undoubt-
edly the plaintiff was a citizen of Massachusetts to start with.   The defendant
undertakes to establish, first, that the plaintiff lost his Massachusetts citizen-
ship and became a citizen of West Virginia; and, second, that his return to
Massachusetts was for the purpose of instituting these actions.   As to the
first, the case is close.   The plaintiff had no time contract with his employer,
and, when he went down to Lamberton, was not committed to stay there, if
he did not like it.   His letters showed plainly that he regarded the removal as
more or less of an experiment.   He continued to live there almost a year, but
never under satisfactory conditions.   He never took his household goods there;

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

they always remained in Massachusetts, at the home of his wife's family, with whom he had previously lived. Aside from his statement in the draft registration, I should be inclined to say that the intention to abandon unconditionally the domicile in Massachusetts and take up one in West Virginia was not established.

"But it is unnecessary to decide this question, because, even if it be thought that a West Virginia domicile was acquired, I have no doubt that it was abandoned when the plaintiff returned to Massachusetts, and abandoned for other reasons than those connected with this litigation. It devolves upon the defendant to establish that the return to Massachusetts was for the purpose of conferring jurisdiction on this court. There is no evidence at all that that was the fact, except such inferences as can be properly drawn from the facts that the plaintiff returned on October 16th (his wife had returned in the previous May, and was already living here with her parents), and that the suit was brought about two weeks later. There were many and entirely adequate reasons why the husband should return to Massachusetts, reasons which had nothing to do with any claim for damages by his wife. I have no doubt that they were the motives which controlled his action. The case is not one in which the change of jurisdiction changes substantial rights, and no reason has been suggested why the plaintiff derived any material advantage in this litigation by bringing it here, instead of in West Virginia. No motive is shown which would have led him to attempt a colorable change of residence for the purpose of bringing this action. I am satisfied that the plaintiff is a citizen and resident of Massachusetts, and that the requisite diversity of citizenship exists."

[2] The second question, viz., whether the defendant was doing business within this district and was legally present herein at the time of service, and whether the agent upon whom service was made was authorized to receive service of process against the defendant, was taken under advisement. The facts in relation thereto are as follows:

The defendant does not own or operate, and never has owned or operated, any railroad within this district. Its railroad does not extend farther north than New York, if so far. It hired an office in Boston and paid the rent therefor; and it had done so for a number of years. Baekey (on whom service was made) was in charge of this office and had other employés under him. He and they were hired and paid by the defendant. They were employed to solicit freight and passenger business for the defendant, and they did so actively. The defendant's name was displayed on the window of the office, with the words "Passenger Office" or "Ticket Office," and upon its timetable folders, under "Boston," Mr. Baekey's name appeared as "New England Passenger Agent." The defendant's name appeared in the telephone index in connection with the office referred to. The list of cities in the folders contained about 60, among them being Los Angeles, Cal., Seattle, Wash., New Orleans, La., Chicago, Ill., Atlanta, Ga., Kansas City, Mo., and Minneapolis, Minn. Speaking generally, it included the principal transportation points in continental United States. At each of them, the defendant apparently maintained agents with duties more or less like Mr. Baekey's.

It does not appear that any tickets were actually sold by Mr. Baekey or the men in that office. Tickets could be obtained there, but in exactly what way does not appear. Nor does it appear that any money or property belonging to the defendant was kept in this district, nor that bills owing to it were collected here by Baekey or his assistants, nor that bills of lading were issued by them.

On the question whether a defendant corporation was doing business in any given district to such an extent that it can be said to have been corporately present there, the cases shade into one another. In St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 33 Sup. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77, Reynolds v. M., K. & T. Ry. Co., 228 Mass. 584, 117 N. E. 913, and Walsh v. Atlantic Coast Line Ry., 256 Fed. 47, D. C. Mass., Feb. 19, 1916, the corporation was held to be present. In Green v. C., B. & Q. R. R. Co., 205 U. S. 530, 27 Sup. Ct. 595, 51 L. Ed. 916, and in American Electric Welding Co. v. Lalance & Grosjean Co., 256 Fed. 34, D. C. Mass., July 31, 1917, it was held not to be present. This case seems to me to be distinguishable from the Walsh Case, and to fall within the latter class of cases rather than in the former.

The plea in abatement will therefore be adjudged good, and the action dismissed.