GEO. WM. BENTLEY CO. v. CHIVERS & SONS, Limited, et al.

(District Court, S. D. New York. November 26, 1913.)

1. CORPORATIONS (§ 668*) — FOREIGN CORPORATIONS — SERVICE — MANAGING AGENT.

Since the object to be attained by service of process is to give defendant notice of suit, if the relations of the party served in an action against a foreign corporation are such that the service will surely give notice to the defendant, the party served being clothed with such general powers and duties that he is in fact the corporation's alter ego, becomes pro hac vice its managing agent for the purpose of receiving process, regardless of the nature of the duties he may perform for it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*]

2. CORPORATIONS (§ 668*) — FOREIGN CORPORATIONS—ACTIONS—SERVICE—PERSONS SERVED.

Where complainant had a contract of exclusive agency to sell the goods of C. & Sons, an English corporation, in the United States until January 22, 1919, and in August, 1913, C. & Sons sent L., whom it described as "a member of our staff," with authority to cancel complainant's contract of agency and to make a settlement, it appearing that C. & Sons was doing business in New York, L., though described as its entomologist, was nevertheless its "managing agent," so that service of a subpoena on him in a suit by complainant to restrain defendant from canceling the contract and appointing another as its agent to handle its goods was sufficient to confer jurisdiction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603–2627; Dec. Dig. § 668.*]

In Equity. Suit by the Geo. Wm. Bentley Company against Chivers & Sons, Limited, and another. On motion to quash the marshal's return of service of subpoena. Denied.

Robinson, Allen & Hoy, of New York City (Nelson L. Robinson, of New York City, of counsel), for plaintiff.

McLaughlin, Russell, Coe & Sprague, of New York City (Rufus W. Sprague, Jr., of New York City, of counsel), for defendant Chivers & Sons, Limited.

COXE, Circuit Judge. This is an action to restrain the defendant, Chivers & Sons, Limited, an English corporation, from granting to any one, other than the plaintiff, the right to sell in the United States the goods of Chivers & Sons, Limited, consisting of jams, marmalades, jellies, etc. The bill alleges that by a written contract dated January 22, 1909, that right was exclusively conferred upon the plaintiff for a period of ten years. The plaintiff insists that it has duly kept and performed all the covenants of said agreement and is able and ready to do so until January 22, 1919, when the said agreement expires. The complaint alleges further that on October 1, 1913, the plaintiff was informed by the defendant that the agency of the plaintiff would be terminated on December 31, 1913. It is also alleged that the defendant Rosenstein Bros., Incorporated, has been, or is about to be, appointed agent for Chivers & Sons, Limited, in the United States in place of the plaintiff. The plaintiff alleges that relying upon the permanency of the said agreement it has expended large sums in organizing said business, has employed about 50 salesmen and has made arrangements with individuals and business houses in various parts of the United States, representing to them that it has an exclusive agency to deal in said goods until January 22, 1919. The plaintiff asserts that if the defendant be allowed to terminate the agreement the plaintiff will suffer irreparable loss for which there is no adequate remedy at law.

The relief demanded is:

First, that the defendant be enjoined from repudiating its contract with the plaintiff by entering into a new contract with Rosenstein Bros., Incorporated, or with any other person.

Second, that Rosenstein Bros., Incorporated, be enjoined from selling the defendant's goods except through the agency of the plaintiff.

In short, the complaint states a clear case of repudiation on the part of the defendant Chivers & Sons, Limited, causing very serious damage to the plaintiff. Although a partial remedy might, perhaps, be obtained by enjoining the defendant Rosenstein Bros., Incorporated, it is manifest that complete relief can only be had by compelling the defendant Chivers & Sons, Limited, to perform its contract with the plaintiff.

The defendant, Chivers & Sons, Limited, now moves to quash the subpoena issued in the cause on the ground that no valid service thereof was made. The marshal makes return and certifies that he served the subpoena upon—

"Chivers & Sons, Limited, by exhibiting the same to Sidney C. Lamb as managing agent in America of said Chivers & Sons, Limited, at Hotel Knickerbocker, New York City, by exhibiting the original and leaving with him a copy."

The defendant insists that this service is insufficient for the reason that Sidney C. Lamb is not an officer, director or agent of Chivers & Sons, Limited, but is simply an entomologist employed by said corporation. That Chivers & Sons, Limited, was doing business in the state of New York through its agent, the plaintiff, can hardly be disputed. In June, 1913, the defendant wrote the plaintiff as follows:

"Should your principal be unable to come over this season, we propose sending out a member of our staff in the autumn to discuss future policy with you."

And in August following it wrote:

"As intimated in our previous letter, we are sending out a member of our staff, Mr. S. C. Lamb, to confer with you as to our future policy in view of the new conditions and possibilities in consequence of the revision of the American tariffs. Mr. Lamb will be accompanied by our managing director's eldest son, Mr. J. Stanley Chivers, and will sail on the 23d inst. per S. S. 'Philadelphia.'"

In September, 1913, Mr. Lamb arrived in New York and complained, upon a seemingly untenable pretext, that the plaintiff had committed a breach of the contract. He then demanded its cancellation, asserting, as the plaintiff contends, that he had full authority from the defendant to terminate the contract. In October, 1913, the defendant wrote the plaintiff, in substance, that Mr. Lamb had full authority from it to terminate the contract and that it considered the contract terminated. On October 2, 1913, Lamb wrote:

"In the circumstances we feel compelled to sever our relations with yourselves and trust that when we arrive in Boston we shall be able to come to some amicable settlement."

It also appears that on the 30th and 31st days of October the defendant had property in the Southern district of New York. Mr. Lamb may be an entomologist, but upon the occasion of his visit to this country he was armed with plenary powers to represent the defendant fully and generally in the matter of cancelling the contract. The plaintiff was the agent of Chivers & Sons, Limited, in this country, but Lamb came from England clothed with all the power to represent it that the corporation could confer. As between the plaintiff and Lamb he was the corporation and represented it as fully as the president could have done if he had come here to attempt to terminate the contract.

· [1] The object to be attained in the service of process is to give the defendant notice of the suit. The Federal courts in fixing the status of the persons who have been served with process issued against a corporation have had this constantly in view. Are the relations of the party served to the defendant of such a character that the service will surely give notice to the defendant? Is he clothed by the defendant with such general powers and duties that he is, in fact, the alter ego of the defendant? He may be called the corporation's entomologist or engineer or attorney, but if in fact he be clothed with general powers to act for the corporation he becomes, pro hac vice, its managing agent.

[2] So far as this litigation is concerned, no better notice could have have been given the corporation, even if service has been made on its president. Lamb was necessarily more familiar with the situation in America than any one connected with the defendant.

To dismiss this suit, in limine, would be a practical denial of justice; it would prevent a trial in this country where the cause of action arose and where most of the witnesses reside and compel the commencement

of a new action in the courts of England. This result should not be permitted unless the law clearly demands it. I do not think the law is so. In Herndon-Carter Co. v. Norris & Co., 224 U. S. 496, 32 Sup. Ct. 550, 56 L. Ed. 857, the court held that in order to subject a foreign corporation to the jurisdiction of a federal court it must be doing business within the state of the court's jurisdiction and service must be made there upon some duly authorized officer or agent. If it appears as matter of fact that the defendant corporation was doing business in the state and that service was made upon its agent, the court has jurisdiction.

In Pennsylvania Lumbermen's Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810, the court held that a fire insurance company which issues its policies upon property in another state is engaged in business in that state when its agents are there adjusting losses.

In Re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211, the question was whether the service of the subpœna upon one Kunhardt was sufficient and the court says:

"There is no room for suggesting that there was within the district any director or other officer of the company, or any agent expressly authorized to accept service upon it. The company's docks where its steamships land and take and discharge cargo, and its office for the transaction of matters immediately connected with its actual industrial operations in this country, were in the state of New Jersey, and under the charge of a superintendent employed and paid by the corporation for the purpose, and not a member of the firm of Kunhardt & Co. But the usual monetary and financial transactions of the corporation were transacted by that firm, as agents of the corporation, at the office of the firm in the city of New York, which had been advertised by the corporation as its own office. The firm of Kunhardt & Co. being the financial agents of the corporation, the office of the firm being in the city of New York, and being the office of the corporation for the transaction of its monetary and financial business in this country, the service of the subpœna in New York upon the head of the firm as general agent of the corporation was a sufficient service upon the corporation. St. Clair v. Cox, 106 U. S. 350, 359 [1 Sup. Ct. 354, 27 L. Ed. 222]; Société Foncière v. Milliken, 135 U. S. 304 [10 Sup. Ct. 823, 34 L. Ed. 208]; Mexican Central Railway v. Pinkney, 149 U. S. 194 [13 Sup. Ct. 859, 37 L. Ed. 699]; New York Code of Civil Procedure, § 432; Tuchband v. Chicago & Alton Railroad, 115 N. Y. 437 [22 N. E. 360]."

See, also, Boston & M. R. Co. v. Gokey, 210 U. S. 155, 28 Sup. Ct. 657, 52 L. Ed. 1002; Peterson v. Chicago R. I. & P. Co., 205 U. S. 364, 27 Sup. Ct. 513, 51 L. Ed. 841.

I am of the opinion that the evidence sufficiently establishes two propositions: First, that the defendant Chivers & Sons, Limited, through its duly authorized agent in New York, was doing business there, and that Sidney C. Lamb, at the time of the service was the defendant's managing agent in New York.

The motion to quash is denied.