WASHINGTON–VIRGINIA RAILWAY COMPANY *v.* REAL ESTATE TRUST COMPANY OF PHILADELPHIA.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 212. Argued April 29, 30, 1915.—Decided June 14, 1915.

Whether a corporation is doing business within a district so as to have submitted itself to the jurisdiction, and was present therein so as to warrant service of process upon it, depends in each case upon the facts proved.

In this case, while the corporation operates railways outside of Pennsylvania and has its general office and keeps one of its bank accounts outside of that State, it has an office in the Eastern District and that State, where its president and treasurer reside, and has an office and keeps bank accounts, within that District; and under all the circumstances of the case, *held* that the corporation defendant had submitted to the local jurisdiction, enjoyed the protection of the laws, and therefore service within the District on its president was sufficient to give the District Court jurisdiction.

THE facts, which involve the question of whether the plaintiff in error had been properly served with process so as to give the District Court jurisdiction of the action, are stated in the opinion.

*Mr. William A. Glasgow, Jr.,* with whom *Mr. John S. Barbour* and *Mr. Norman Grey* were on the brief, for plaintiff in error.

*Mr. John G. Johnson,* with whom *Mr. Joseph DeF. Junkin* was on the brief, for defendant in error.

Mr. Justice Day delivered the opinion of the court.

This case is here upon the single question of the jurisdiction of the United States District Court for the Eastern District of Pennsylvania to entertain the action. The suit was begun by the Real Estate Trust Company of Philadelphia, against the Washington-Virginia Railway Company, a corporation of the State of Virginia, to recover a judgment on certain bonds made by the Washington, Alexandria & Mt. Vernon Railway Company, also a Virginia corporation, payment of which, it was alleged, had been assumed by the Washington-Virginia Railway Company. The summons in the action was served upon the president of the defendant Railway Company, at its office in Philadelphia, by handing a true and attested copy of the summons to the president, at such office.

There is no question that the president was the proper officer to serve, and that he was duly served with process. The contention of the plaintiff in error is that the service is void and the court without jurisdiction because at the time of the service of process the defendant corporation was not doing business in the Eastern District of Pennsylvania, wherein service was made. As this court has had frequent occasion to say, each case of this kind must depend upon its own facts, and the question is whether the defendant corporation had submitted itself to the local jurisdiction and was present therein so as to warrant service of process upon it. See *St. Louis &c. Railway* v. *Alexandria,* 227 U. S. 218, and previous cases in this court cited on page 226.

The District Court found certain facts, from which it appears: The defendant is the successor to two electric railway companies, one of which was the Washington,

Alexandria & Mount Vernon Railway Company, which issued the bonds upon which the present suit was brought. The defendant company operates electric railway lines from Mount Vernon to Alexandria, in the State of Virginia, and from that city to Washington, in the District of Columbia. Under the laws of Virginia, the defendant company might have offices outside the State. The Virginia office of the company, under the laws of Virginia, must be kept in that State, and was at Mount Vernon, where there was a ticket agent, and where the annual meetings of the stockholders were held. The company maintained a general office at Washington, D. C., where the business of conducting the physical operation of the road was carried on through its manager. At the Washington office the cash books of the company were kept, showing daily receipts, collection of accounts due, operating record, pay roll, time record, and statement of claims accruing and their payment as made. No books of the company concerning its business were kept at the Mount Vernon office. The commercial account of the company was kept at the Commercial National Bank, of Washington, D. C., where the receipts from the operation of the road were deposited, and where checks for operating expenses were drawn on that bank. The company also kept three smaller accounts in Alexandria, Virginia.

For some time prior to the merger, the Washington, Alexandria & Mount Vernon Railway Company maintained an office in the Real Estate Trust Building, at Philadelphia, which office was leased by the president of that company, one Clarence P. King, who subsequently became president of the merged company and who was succeeded by Frederick H. Treat, president of the defendant company at the time of the service of this writ. The defendant company paid rental to Mr. King at the rate of fifty dollars per month, which covered the right of desk room for its president, treasurer and bookkeeper, and the

use of the furniture, fixtures and telephone in the office. No formal authority from the directors appears for maintaining any office except that at Mount Vernon, Virginia, but the by-laws of the company provide that its stock shall be transferred only on the books of the company at the office of its treasurer. Upon application for listing its stock on the Washington Stock Exchange, the Washington, Alexandria & Mount Vernon Railway Company, through its president, declared that the principal office of the company was located at Mount Vernon, Virginia, with branch offices at Washington and Philadelphia.

After the merger, the defendant applied to the Philadelphia Stock Exchange for the listing of its securities, and declared in its application "Stock is transferred at the Company's General Office, 1307 Real Estate Trust Building, Philadelphia, and registered by the Girard Trust Company, Philadelphia, Registrar," and declared its offices to be as follows:

"Offices:
    "Principal, Mt. Vernon, Virginia.
    "General and Transfer, 1307 Real Estate Trust Building, Philadelphia.
    "Washington: 1202 Pennsylvania Avenue."

At the office in Philadelphia, the corporation kept its regular business ledgers, its stock transfer books and stock ledgers. The bookkeeper of the company had his desk in the office at Philadelphia, made his entries in the corporation books kept there, and conducted general correspondence in relation to the Company's business at that office. The treasurer of the company maintained the only treasurer's office of the company there, and had there his desk, papers, and books. The company had four bank accounts in Philadelphia, into which accounts, from time to time, was deposited the surplus of cash not needed in the active operation of the company. Out of these ac-

counts were paid interest on mortgages, dividends, and the larger bills, by checks drawn at the Philadelphia office by the treasurer, and the deposit and check books on such banks were kept at the Philadelphia office. The president kept the official seal of the company in Philadelphia. The president and treasurer lived in Philadelphia. The president had his desk at the office in the Real Estate Trust Building, where he was present two days in each week and went to Washington twice a week. While in Philadelphia, the president transacted such business of the company as came to his attention, and conducted the correspondence of the company upon official stationery, upon which appeared the address at the Real Estate Trust Building, and the words, "Office of F. H. Treat, President, Philadelphia," or, "Office of the President, Philadelphia." The bills of the company, after approval in Washington by the manager of the railway, were sent to Philadelphia for examination and approval, and the checks for payment were drawn at the Philadelphia office and forwarded to Washington. No one at the Washington office had authority to draw checks. No money was paid out at the Washington office except petty cash for daily expenses.

With this finding of facts counsel for the plaintiff in error finds little fault. The objection is rather to the inference drawn by the court below from such facts. It is urged that the keeping of the books in Philadelphia was for the convenience of the president and treasurer, but it also appears that such books were required to be kept by the by-laws of the company. Among the uncontroverted facts it appears that the defendant company had an office in the city of Philadelphia, where the president of the company lived upon whom service was made, and that at this office the treasurer of the company, who also lived in Philadelphia, kept its regular books, and from this office was conducted a general correspondence in relation to the business of the company. The company kept

four bank accounts in separate banks in the city of Philadelphia, where money was deposited and checked out in payment of mortgages, dividends, and the larger bills of the company. Such business of the company as required his attention at the Philadelphia office was there transacted by the president. Checks for payment of bills of the company at Washington were drawn at Philadelphia and forwarded to Washington.

We think the mere recital of these facts makes it evident that the corporation was properly served. It had submitted itself to the local jurisdiction, and there enjoyed the protection of the laws. In that jurisdiction by duly authorized agents it was at the time of service transacting an essential and material part of its business.

It follows that the judgment of the District Court, maintaining its jurisdiction, must be

*Affirmed.*