## HASKELL v. ALUMINUM CO. OF AMERICA et al.

(District Court, D. Massachusetts. August 18, 1926.)

No. 2624.

**1. Statutes ⬥212.**

In a statute enacted by Congress, it is presumed that a word is used as previously defined by the courts.

**2. Monopolies ⬥28—When foreign corporation is "found" or transacting business in district for jurisdictional purposes (Comp. St. § 8835k).**

A foreign corporation, to be "found" in a district, to give jurisdiction of an action against it under Clayton Act, § 12 (Comp. St. § 8835k), must be doing business in the district in such manner and to such an extent that its actual presence there is established, and that question must be determined in each case upon the particular facts of that case, and it may "transact business" in district without being "found" there.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Found.]

**3. Monopolies ⬥28—Foreign corporation held "found" in district of Massachusetts for purpose of giving jurisdiction of suit against it under anti-trust laws (Comp. St. § 8835k).**

A Pennsylvania corporation, with its principal office in Pittsburgh, maintained a sales office in Boston, in charge of a district sales manager and with some 18 other employees, including salesmen, who canvassed the New England states. It kept no bank account in Massachusetts, rent and salaries being paid by checks from the home office and other expenses by the manager from funds advanced. Orders for goods were received and acknowledged by the Boston office, which retained the same, sending copies to the home office, to which all payments were made, and which also fixed prices. The Boston manager made contracts with its employees, subject to approval by the home office, and the

company purchased scrap aluminum through the Boston office. Held, that defendant was "found" in the district of Massachusetts, within Clayton Act, § 12 (Comp. St. § 8835k), for the purpose of giving the federal court in that district jurisdiction of a suit against it for violation of the anti-trust laws, and was also "transacting business" in the district, within the statute.

**4. Corporations ⊜668(5)—Service on manager for the state of the business of a foreign corporation held good service on the corporation (G. L. Mass. c. 223, §§ 36-38).**

Service of summons on the manager in charge of the business of a foreign corporation doing business in the state held good service on the corporation, under G. L. Mass. c. 223, §§ 36-38.

**5. Courts ⊜344.**

Under the general provisions of law, a federal District Court cannot issue process beyond the limits of its district.

**6. Courts ⊜344—In suit in federal court under Clayton Act, summons may, without special order, be issued to marshal of another district (Comp. St. § 8835k).**

Under Clayton Act, § 12 (Comp. St. § 8835k), providing that any suit or action under the anti-trust laws against a corporation may be brought in the district whereof it is an inhabitant, or in any district wherein it may be found or transacts business, and that "all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found," where a federal District Court which has jurisdiction of such an action, summons may, without special order be issued to the marshal of another district.

At Law. Action by George D. Haskell against the Aluminum Company of America and others. On motion of defendant company to dismiss, and plea and answer in abatement. Motion denied, and plea and answer overruled.

Sherman L. Whipple and Edward C. Park, both of Boston, Mass., for plaintiff.

Charles E. Hughes, of New York City, and Edward F. McClennen, of Boston, Mass., for defendant Aluminum Co. of America.

BREWSTER, District Judge. From the record in this case, the following appears:

A writ of summons and attachment in the usual form obtaining in this district, except that it was directed, not only "to the marshal of our district of Massachusetts, or his deputy," but also "to the marshal of the Western district of Pennsylvania, or his deputy," issued out of this court on the 21st day of September, 1925. In the writ the Aluminum Company of America, a Pennsylvania corporation, together with eight individual defendants, none of whom

were citizens of Massachusetts, were named as defendants.

On September 25, 1925, service was made on the defendant Aluminum Company of America by the deputy marshal of the Western district of Pennsylvania, by giving in hand to the vice president of the corporation at Pittsburgh, Pa., a copy of the writ and an original summons. On the 30th day of September service was also made on this defendant by a deputy marshal for this district, by giving in hand to Andrew J. Hamilton, defendant's New England manager, at Boston, Mass., a "true and attested copy" of the writ and an original summons. None of the other defendants have been served with process.

The defendant Aluminum Company of America (hereinafter referred to as defendant) appeared specially for the purpose of filing a motion to dismiss and a plea and answer in abatement. The motion and answer were seasonably filed. The motion and answer are now presented for consideration, after hearing at which evidence was received material to the issues of fact raised by the plea and answer. It is conceded that, if the declaration filed with the writ states a cause of action, the cause arises under and by virtue of the anti-trust laws of the United States. There is no controversy respecting the facts. The questions demanding consideration are wholly questions of law, and relate to the jurisdiction of this court and the sufficiency of the service upon the defendant.

The defendant contends that the District Court of this district is without jurisdiction to entertain a suit brought against it under the Clayton Act, alleging that the "defendant at the time of the alleged injury and at any and all times thereafter was never found in the district of Massachusetts, nor did it transact business therein, nor did it have an agent therein, nor was it an inhabitant thereof nor did it reside therein. * * * *"

A determination of this question of jurisdiction necessitates a somewhat detailed statement of the manner in which the defendant conducted its activities within the commonwealth of Massachusetts and the extent of them as disclosed by the evidence presented at the hearing. I find that the defendant, a Pennsylvania corporation, had its principal place of business in Pittsburgh, Pa. For over 20 years it, or its predecessor, has maintained an office in Boston, in this district, known as the "New England District Sales Office." For over 5 years its

office has been at 209 Washington street, Boston, where the defendant leases and occupies a suite of seven rooms. The only sign on the door leading to this suite is "Aluminum Company of America." These rooms are completely furnished with desks, filing cabinets, typewriters, and other furniture found in a well-equipped business office, including a telephone switchboard, into which two trunk lines run.

In the fall of 1925, the office force consisted of a district sales manager, an assistant district sales manager, a local sales manager, eight salesmen, and seven stenographers, nearly all of whom resided in Massachusetts and made the office their headquarters. It was the duty of the defendant's employees to solicit orders for products manufactured by the defendant or its subsidiaries from persons resident in the New England states, except Connecticut. It was also a part of the duties incumbent upon the employees attached to this office to investigate and report on customers' complaints, to inspect and report upon aluminum scrap offered for sale in Massachusetts, and upon delinquent accounts.

These duties were performed under the supervision of the district sales manager or his assistants. These managers did whatever was necessary to the maintenance of the New England district sales office, and, subject to the approval of the home office at Pittsburgh, employed salesmen and stenographers, and contracted with the telephone company for service and for advertisement. Circulars furnished by the Pittsburgh office giving information regarding aluminum were mailed to customers from the Boston office.

The general sales manager from Pittsburgh visited the Boston office several times each year during the years 1924 and 1925, and on these occasions discussed with the New England sales managers and salesmen the business of the defendant transacted with persons in Massachusetts, made recommendations and gave directions in respect to the business, and generally investigated, consulted, and directed regarding the activities carried on through the Boston office. The defendant kept no bank account in Massachusetts. Rent and salaries were paid by check from the Pittsburgh office. Office expenses, such as telegraph, telephone, water, light, and office supplies, were paid by the district manager, or his subordinates, out of funds advanced by the defendant, but deposited in the name of the employee receiving the advance. Traveling expenses of the salesmen were paid in the same way. The general course of the business as carried on by the office was as follows:

Orders would be received at the Boston office by letter, telephone, or telegram, sometimes as a result of solicitations, and sometimes without solicitation. All original orders were kept at the Boston office. These orders were transcribed by stenographers onto blank forms, of which the original and two copies were sent to the Pittsburgh office, and one copy kept in the Boston office in an order book. The order would be acknowledged from the Boston office, and correspondence with the customers was carried on relating to the prices, dates of shipment, whether shipment to be by freight or express, and relating to errors, to complaints, and to credits. Much of this correspondence, when in the usual course of business, would be attended to by stenographers without consultation with the district manager. If the product was that of one of the defendant's subsidiaries, the employee at the Boston office would sometimes communicate by wire or letter directly with the subsidiary company with reference to the order, for example, dates of shipment, without referring the matter to the Pittsburgh office. The authority of these employees, however, was limited. They had no authority to fix prices, to accept orders, or to agree upon terms of payment, without the approval of the Pittsburgh office. Payments for goods purchased by customers in the New England district were made to the Pittsburgh office. Whether the local employees had authority to receive, for the purpose of transmitting to Pittsburgh, payments for such purchases, does not appear; but it does appear that the Boston office kept no books of account showing payments made by customers. All contracts of employment were also subject to the approval of the officials at Pittsburgh, but a manager interviewed applicants for positions and recommended the employment and the salary to be paid.

In 1925 the defendant sold customers, resident in Massachusetts, goods to the total amount of $3,112,212.45. Substantially all of that amount represents transactions carried on, in part, at least, through the New England district office at Boston. The great bulk of the sales, in value, represented sales of product manufactured, not by the defendant, but by affiliated or subsidiary companies in which the defendant owned a con-

trolling interest—for example, the United States Aluminum Company, with manufacturing plants in New York, Pennsylvania, New Jersey, Michigan, Tennessee, Connecticut, and Ohio; the Aluminum Ore Company, with plant in Illinois; the Aluminum Seal Company, with plant in Pennsylvania; the Aluminum Die Castings Corporation, with plant in New Jersey; the Aluminum Screw Machine Products Company, with plant in New Jersey, and the American Magnesium Corporation, with plant in New York. During this same period the defendant bought from persons in Massachusetts about $10,000 worth of scrap aluminum. The employees of the defendant in Massachusetts looked over the material and conducted the negotiations for its purchase.

Section 12 of the Clayton Act (Act of October 15, 1914, c. 323, § 12, 38 Stat. 736 [Comp. Stat. § 8835k]) provides as follows: "Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The first inquiry is whether, on the state of facts above outlined, it can be said that the defendant is "found" within the judicial district of Massachusetts, and the secondary question is whether it is "transacting business" in the district, within the meaning of that term as used in the section just quoted.

[1] It seems to be too firmly established to admit of argument that in statutes affecting venue the word "found" has been given a definite legal significance when applied to foreign corporations, and it will be presumed that, when Congress enacted the Clayton Act, it used the word as defined by the courts. Standard Oil Co. v. United States, 221 U. S. 1 at 59, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734.

[2] Under these decisions, a foreign corporation might "transact business" in the usual acceptation of the words, and still not "be found" in the state where the business was transacted. Whether it was within the state, so as to be amenable to process therein, depended upon the character and extent of the business that was carried on; the general rule being that the nature and character of the business must be such "as to warrant the inference that the corpora-

tion has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537.

"The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like "qui facit per alium facit per se." It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established." Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594.

See, also, St. Louis Southwestern Railway Co. of Texas v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, Ann. Cas. 1915B, 77; International Harvester Co. of America v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479.

In both the Alexander and the American Tobacco Co. Cases, supra, the courts observed that the question must be decided in each case and upon the particular facts of that case. See Washington-Virginia Railway Co. v. Real Estate Trust Co., 238 U. S. 185, 35 S. Ct. 818, 59 L. Ed. 1262.

[3] If we turn to the adjudicated cases for examples of the application of the general rule to any given state of facts, we find cases falling on both sides of the line which lies between business that operates to bring the foreign corporation within the local jurisdiction and business that does not have that effect. In Green v. Chicago, B. & Q. Railway Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, the Chicago, Burlington & Quincy Railway Company, an Iowa corporation, maintained an office in Philadelphia, employed therein a district freight and passenger agent, and advertised the fact to the public. The business of the agent was to solicit business for the railroad. Several clerks and traveling agents were employed who acted under the direction of the district agent. No tickets were sold at this office, but the agent received money for transportation, for which he gave prepaid orders that could be exchanged for tickets at Chicago. The court held these facts were not sufficient to bring the corporation within the state of Pennsylvania, so that service upon its agent would give the court jurisdiction.

In the next case, upon facts somewhat similar, the court reached an opposite con-

clusion. There the St. Louis Southwestern Railway Company of Texas was one of the two railroads constituting the "Cotton Belt Route." This combination had an office in the city of New York. It had upon the door of the office, and on the stationery used, the words "Cotton Belt Route," together with the words "St. Louis Southwestern Line" and the names of the general Eastern freight agent and traveling freight agent. The suit was brought to recover damages arising from the alleged negligence of the railroad company, and the court stressed the fact that negotiations for the settlement of the claim had been conducted by means of correspondence through the New York office and the settlement of the claim attempted, but it further appears that all correspondence was submitted for approval to the Texas office. St. Louis Southwestern Railway Co. of Texas v. Alexander, supra.

On the authority of this last case, the United States Supreme Court (255 U. S. 565, 41 S. Ct. 446, 65 L. Ed. 788) without opinion affirmed the decision of the Supreme Judicial Court of Massachusetts in Reynolds v. Missouri, Kansas & Texas Railway Co., 228 Mass. 584, 117 N. E. 913. In this case the railway company entered into an agreement with a resident of Massachusetts whereby the agent was to represent the railway as New England passenger agent, with headquarters in Boston. He received commission on sale of tickets sold in the six New England states. The railway maintained no office and incurred no expense for rent, advertising, or traveling expenses. The agent used stationery which showed that he was acting as New England passenger agent for the railway. His appointment was advertised in New England. He was consulted by the officials in regard to passenger business. He used telegraph franks, which he was authorized to use only on business of the company. Local ticket agents in Boston conferred with him whenever they wanted information respecting the defendant railway system. He received and took up with his company complaints about transportation. In a few instances he issued prepaid orders for transportation on defendant's railway system, to be later exchanged for tickets. The money for this was sent directly to the railway. He did not have for sale at his office any tickets of the defendant company, but sold them through arrangements with other railroad companies. He rendered no account, except for the prepaid orders. At the same place of business he was, in a similar manner,

representing numerous other railroads. The Supreme Judicial Court held that the case fell within the principle and the facts of the Alexander Case. Reynolds v. M., K. & T. R. Co., 224 Mass. 379 at 385, 113 N. E. 413.

In International Harvester Company of America v. Kentucky, supra, the Supreme Court again found the corporation to be amenable to process in the state wherein it was conducting business, although it maintained no office in the state. In that case there was an obvious intent and desire on the part of the Harvester Company not to do business in such a manner as to justify the courts of the state of Kentucky in taking jurisdiction over it. It sent into the state traveling salesmen to negotiate sales of the Harvester Company's product, with authority limited to taking orders, which must be subject to the approval of the general agent outside of the state; but they had a right to receive payments, but no authority to make allowances or compromise disputed claims. They could receive notes for the purchase price which might be payable at any bank in Kentucky. All contracts with people in Kentucky were required to be made outside of that state. The court held that this showed a "doing of business within that state to the extent which will authorize the service of process upon its agents thus engaged." The court laid emphasis on the fact that the agents could receive payments in cash or notes and that the notes might be payable in Kentucky. The court distinguished the case from the Green Case by pointing out that in the former the court only found solicitation, whereas in the Harvester Case in response to solicitation there was a continuous course of shipment of machines into Kentucky. The Harvester Case has been followed by the Court of Appeals in New York in a case involving facts very similar to those in the case at bar, the only difference being that the foreign corporation carried a bank deposit in the city of New York. In other respects the manner of conducting its business was similar to that of the defendant in the case at bar. Tauza v. Susquehanna Coal Co., 220 N. Y. 259, 115 N. E. 915.

The defendant relies upon the case of People's Tobacco Co. v. American Tobacco Co., supra, but it should be noted that in that case the defendant Tobacco Company had been ordered to dispose of its business in Louisiana, and the court remarks that the defendant had undertaken in good faith to carry out the decree of dissolution and to

take that company out of business in the state of Louisiana. Thereafter the defendant was selling goods in Louisiana to jobbers by sending drummers into that state to solicit orders of the retail trade to be turned over to the jobber. The court observes that none of these agents were domiciled in the state; they had no authority to make sales on account of the defendant company, collect money, or extend credit for it. On these facts the court held that the company was not found within the state of Louisiana, within the meaning of that term as fixed by the courts.

The decisions of the Supreme Court dealing with the domicile of corporations in states other than the state of incorporation, I think, reveal a tendency to confine the principle of the Green Case to the particular facts of that case. I am of the opinion that the case at bar is governed by St. Louis Southwestern Railway Co. v. Alexander, supra, Reynolds v. Missouri, Kansas & Texas Railway Co., supra, and International Harvester Co. of America v. Kentucky, supra. We have present here all the factors of these cases, except that the representatives of the Aluminum Company of America could not collect payment for the merchandise sold; but the case presents several important factors in addition to those appearing in any one of these cases. See, also, Pennsylvania L. M. F. Ins. Co. v. Meyer, 197 U. S. 407, 25 S. Ct. 483, 49 L. Ed. 810; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782.

I think the facts in the case at bar are clearly distinguishable from those appearing in Minnesota Commercial Men's Ass'n v. Benn, Executrix, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573; Lumiere v. Wilder, Inc., 261 U. S. 174, 43 S. Ct. 312, 67 L. Ed. 596; Rosenberg Brothers & Co., Inc., v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372; Philadelphia & Reading Railway Co. v. McKibbin, 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710.

My conclusion, therefore, is that the activities carried on by the defendant through its New England district sales office constituted the carrying on of business in Massachusetts to such an extent, and were of such a nature, that it must be held that the defendant was "found" within the district of Massachusetts, within the meaning of that word as used in the Clayton Act. Under the express terms of section 12 of the act, process could be served upon the corporation in Massachusetts.

Furthermore, I am inclined to concur with those decisions dealing with section 12 of the Clayton Act, which have held that its terms give to a party injured in his business or property by reason of anything forbidden in the anti-trust laws an additional venue for his suit.

As I interpret the statute, such a plaintiff is at liberty to sue the offending defendant corporation (1) in the district where incorporated; (2) in the district where it is "found," as that word has been defined by the courts; and (3) where it transacts business. If the facts in the case at bar do not establish the defendant's presence in Massachusetts, it cannot be disputed that it has been transacting business in Massachusetts. In the Green Case, Mr. Justice Moody points out that the Chicago, Burlington & Quincy Railway was doing "a considerable business of a certain kind," but that the nature of it was such that it did not bring the railway within the state so that process could be served upon it. It cannot be gainsaid that the defendant Aluminum Company of America was doing here in Massachusetts a considerable business of a certain kind. This court, therefore, has jurisdiction to entertain the action, because this is the district in which the defendant Aluminum Company of America is "transacting business." This construction of the act has been adopted by the federal courts in several cases. Venner v. Pennsylvania Steel Co. (D. C.) 250 F. 292; Southern Photo Material Co. v. Eastman Kodak Co. (D. C.) 234 F. 955; Eastman Kodak Co. v. Southern Photo Material Co. (C. C. A.) 295 F. 98; Frey & Son, Inc., v. Cudahy Packing Co. (D. C.) 228 F. 209.

I rule, therefore, that the plaintiff may resort to this court in an action to enforce his remedy under the anti-trust laws, and the suit should not be dismissed because of lack of jurisdiction.

[4] The remaining question of importance is whether the court has acquired jurisdiction over the defendant by proper service upon it. In view of the conclusions which I have reached respecting the legal consequences flowing from the activities of the defendant within this district, I have little difficulty in disposing of defendant's plea and motion, so far as they relate to alleged defective service. The officer's return shows that the writ issued in this action was served upon the defendant in Massachusetts, by leaving an attested copy with the defendant's New England district manager, Hamilton. This service an-

swers the requirements of the Massachusetts laws relating to service upon foreign corporations. G. L. Mass. c. 223, §§ 36–38.

The writ was also served upon the defendant in Pennsylvania, the state of its incorporation. The service was made upon an executive officer of the company. I understand no question is raised as to the sufficiency of this service, providing the District Court of the United States for the District of Massachusetts had the right to issue a writ, without special order, directed to the marshal of the district of Pennsylvania. The contention of the defendant respecting the service of process in Pennsylvania is that this court has no authority to issue a writ directed to the marshal of the district of Western Pennsylvania, and if it has such authority it cannot be exercised without special order of the court.

[5, 6] As to the power of the court to issue process to run into other districts, I find that under the general provisions of law a United States District Court cannot issue process beyond the limits of its district. Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Robertson v. Railroad Labor Board, 268 U. S. 619, 45 S. Ct. 621, 69 L. Ed. 1119. But it can no longer be doubted that Congress has the power to confer upon that court authority to issue process beyond the territorial limits of its district. U. S. v. Union Pacific Railroad Co., 98 U. S. 569, 25 L. Ed. 143; Robertson v. Railroad Labor Board, supra. This has been done in the Act of October 22, 1913, c. 32, 38 Stat. 208, 219, 220, repealing the act creating the Commerce Court (36 Stat. 539). In the Materialmen's Act of August 13, 1894, c. 280, 28 Stat. 278, as amended February 24, 1905 (33 Stat. 811, c. 778), the action on the bond in the name of the United States must be brought in the district in which the contract was to be performed. The court held that process could be served upon the defendant wherever found.

The Sherman Act of 1890 (Act of July 2, 1890, c. 647, § 5, 26 Stat. 209, 210 [Comp. St. § 8827]) and section 15 of the Clayton Act (Comp. St. § 8835n) contain provisions which enable the court to send its process into other districts, to be served by the marshal thereof, when, in any pending case, the ends of justice require that other parties shall be brought before the court. Section 12 of the Clayton Act is another instance of this special grant of power. It expressly provides that process may be served in the district of which the corporation is an inhabitant or wherever it may be found. In enacting these provisions, Congress, in my opinion, contemplated the possibility that a suit might be brought within the jurisdiction of a court whose process would not reach to the defendant without enabling legislation, and the provision was inserted in order that any court of competent jurisdiction might send its process for service into the district where the corporation was incorporated, or where it was transacting business so as to be amenable to legal process in that district. When Congress provided that "all process" could be served in the district of which the corporation was an inhabitant, or wherever it might be found, it had in mind any process issued by such court of competent jurisdiction in conformity with the practice of that court.

The writ issued in the case at bar in all respects conformed to the practice obtaining in this district in law actions, and the local rules relating to the manner of its issuance were complied with. In issuing similar process, under analogous provisions authorizing extraterritorial service, it has never, so far as I can learn, been deemed necessary to obtain an order of court. Other minor objections to service were raised in defendant's plea and answer, but these either were not supported by the evidence or they have become unimportant in view of my conclusions.

Plaintiff has filed certain requests for rulings, all of which are granted.

The defendant also has requested rulings. Of these requests the fourth, ninth, tenth, and fourteenth requests are granted. All of the other requests are refused.

The motion to dismiss of the defendant Aluminum Company of America is denied, and its plea and answer is overruled.