## Griffin & Vose, Inc., v. Non-Metallic Minerals Corporation

*Townsend, Elliott & Munson,* for plaintiff.

*W. W. Montgomery, Jr.,* for defendant.

SLOANE, J., February 25, 1944.—This petition prays to set aside the service of the summons.

Plaintiff brought suit on a note of defendant corporation for $15,000, dated February 5, 1937, payable three months after date at 1110 Land Title Building, Philadelphia, Pa. It was made to the order of James A. Mayberry, and endorsed in blank by him.

The summons was served April 20, 1943, upon Edgar C. VanDyke, secretary of defendant corporation, at his office in Philadelphia. An appearance de bene esse was entered for defendant, and a petition presented praying that the service be set aside on the ground that VanDyke was never designated its agent for service of process, or authorized to transact business of any kind for defendant in this State; that his residence and business here were purely personal to him.

The petition further averred that defendant is a North Carolina corporation, it never registered to do business in this Commonwealth, it never appointed a registered agent, and in fact it never did business here.

Plaintiff filed an answer to the petition admitting that defendant is a North Carolina corporation which never registered in Pennsylvania or appointed an agent for the service of process, but averred that certain acts done here on behalf of defendant constituted "doing business" in Philadelphia, and that the service was therefore valid.

Depositions were taken on behalf of both plaintiff and defendant on the disputed issues of fact. From these depositions it appears that defendant was incorporated in North Carolina in 1937 to develop a certain

275-acre tract of mica land in Yancey County, North Carolina. Mayberry owned this tract and transferred it to the corporation, and the latter issued all its shares to Mayberry and, in addition, gave him its note for $15,000. Plaintiff gave Mayberry $15,000 for the note, and he put up his shares as collateral. Robert H. Griffin of plaintiff corporation was elected president of defendant corporation; Mayberry, vice president; Edward Lukens, an employe of plaintiff, treasurer; and VanDyke, secretary.

Defendant has transacted practically no business during its entire existence, and since November 1940 has been totally inactive, by plaintiff's admission.

Defendant never operated the property in North Carolina itself. Various surveys and engineering reports were made, and negotiations conducted as to leases. In 1939 a lease was entered into with National Minerals Corporation, and $750, representing three months' rental, was received from it, but it then failed and went out of business. The only other income ever received by defendant was $30 or $40 received from local "groundhoggers" in North Carolina who had removed mica from the land. Several other sums were received in financing operations for which shares were issued. State franchise taxes to North Carolina and Federal taxes were paid from time to time. No salaries have ever been paid to any officers or employes.

After the first incorporation meeting held in North Carolina, subsequent meetings were held in Philadelphia at the offices of plaintiff corporation. Plaintiff maintained that this was also an office of defendant; that it accommodated defendant with space in its offices but charged no rent therefor. Defendant's name was not on the door nor in the telephone directory. Griffin said he thought it was on the building directory, but an official of the office building said his records showed that it did not appear there.

Account books and files of defendant were kept in the office of Griffin & Vose, Inc., in Philadelphia, as well as the bank book and check book of its account in the Corn Exchange National Bank & Trust Company of Philadelphia. This was the only bank account defendant ever had. The funds of this account were exhausted in 1940, and since then Griffin & Vose, Inc., plaintiff, or Griffin and Vose, as individuals, have advanced money for taxes since defendant corporation had no funds of its own. Lukens, an employe of plaintiff, kept the books of defendant, but did not receive any additional compensation therefor. He had been elected treasurer of defendant in 1937. Samples of mica and other minerals from defendant's land in North Carolina, as well as copies of surveys, engineering reports, proposed leases, etc., were also kept in plaintiff's office. There was testimony that letterheads of defendant corporation had been printed, using plaintiff's Philadelphia address.

VanDyke, who had been elected secretary of defendant in 1937, was also a Philadelphian who had his residence and law office here. He was not connected with plaintiff. He had custody of the minute book of defendant and the stock certificate books. The stock transfer book was kept in North Carolina.

Plaintiff's witnesses stated that there had been no election of officers or directors after 1937, so that the same ones continued in office.[1]

---

[1] There had been nominal officers for the purpose of the incorporation who resigned soon thereafter. According to VanDyke, a stockholders' meeting took place in Spruce Pine, N. C., in February 1943, at which new directors were elected. These directors held a meeting right afterward and selected new officers. Copies of the minutes of these purported meetings have been submitted. Griffin, Vose, and Lukens said they had never been given notice of these meetings. Defendant's position is that their previous election as officers or directors had been void because they never owned shares of common stock, and resolutions were adopted at the February 1943 meeting repudiating all the transactions of this group of officers and directors.

In November 1940, plaintiff closed its Philadelphia office and moved to New York City. Defendant's books, records, and mineral samples were taken along.

It might appear short and plain that service was not good since the suit was not begun until 1943, and admittedly defendant corporation has been inactive since 1940. But inactivity is no obstacle to proper service if there was prior activity, prior "doing business", and there is a cause of action arising out of the business done within the State: A. L. I. Restatement of Conflict of Laws, sec. 93. As we shall state, that turns out to be the core of this matter.

On the other side it is plaintiff's thought that since the note by its terms is made payable in Philadelphia (though executed in Spruce Pine, N. C.) the cause of action arose here, and, the argument follows, suit may be brought here. But cause of action is one thing, and jurisdiction of that action quite another. One is a right arising out of nonfulfillment of an obligation, and the other is the power [2] to require and enforce fulfillment of that obligation. Thus it is that, "if the corporation was not doing business within the state, it is immaterial that the cause of action arose within the state; and it is immaterial that performance of the obligation upon which the action is based was due within the state": 1 Beale on Conflict of Laws 373 (1935);

---

[2] "The foundation of jurisdiction is physical power, although in civilized times it is not necessary to maintain that power throughout proceedings properly begun, and although submission to the jurisdiction by appearance may take the place of service upon the person . . . No doubt there may be some extension of the means of acquiring jurisdiction beyond service or appearance, but the foundation should be borne in mind. Subject to its conception of sovereignty even the common law required a judgment not to be contrary to natural justice . . . And in States bound together by a Constitution and subject to the Fourteenth Amendment, great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact": Holmes, J., in McDonald v. Mabee, 243 U. S. 90, 91 (1917).

Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U. S. 516 (1923) ; Toledo Railways & Light Co. v. Hill et al., 244 U. S. 49, 53 (1917).

Nor can it be assumed or inferred that, by making the note payable in Philadelphia, defendant had consented or yielded, so to say, to our county here as the jurisdiction for any suit upon the note—jurisdiction of the subject matter but not of the person.

Eventually there arises the problem of "doing business", for that is a defined proposition: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such extent as to warrant the inference that it is present there. . . . Whether the corporation was doing business within the State and whether the person served was an authorized agent are questions vital to the jurisdiction of the court": Brandeis, J., in Philadelphia & Reading Railway Co. v. McKibbin, 243 U. S. 264, 265 (1917). It is by the doing of business that it submits to jurisdiction: Shambe v. Delaware & Hudson Railroad Co., 288 Pa. 240 (1927).

And the facts of this case appear sufficient to establish that defendant was doing business in Pennsylvania. Of course, we are enveloped by the precise facts of the case in hand: Washington-Virginia Railway Co. v. Real Estate Trust Company of Philadelphia, 238 U. S. 185, 186 (1915) ; Shambe v. Delaware & Hudson Railroad Co., supra; and all the acts done must be taken together: Commonwealth v. Wilkes-Barre & Hazleton Railroad Co., 251 Pa. 6, 10 (1915). The activity here on behalf of defendant would indicate that the management and financial policy of the company were conducted from Philadelphia.

Three of the officers and two members of the board resided here and the stockholders' and directors' meetings were held here. Although residence of officers or

directors taken alone cannot give jurisdiction where they do not represent the corporation officially in the State: Conley v. Mathieson Alkali Works, 190 U. S. 406 (1903) ; here there was more than mere residence. In addition to the meetings, the only moneys of the corporation were kept here in the only bank account the corporation had. All receipts and disbursements were taken into and paid out of this account. The local, State, and Federal taxes were paid from here. Bills submitted to defendant at Micaville, N. C., were forwarded unopened by Mayberry, the only officer there, to be taken care of from Philadelphia. Stock books, engineering records, and samples of minerals from the land were kept here, so as to be ready to make deals if prospects could be interested.

The corporation was not a success, so that, taken altogether, what was done here did not amount to much. But it is a comparative matter, too; practically everything that the corporation did do was done here.

The case therefore appears analogous to Mingus et al. v. Florence Mining & Milling Co., 302 Pa. 529 (1931), where a Delaware corporation which had its mining properties in Utah conducted its financial operations and managed the company from Philadelphia. The acts done on behalf of the company amounted to considerably more than in this case; for example, it paid rent, had its name on the office door, building directory, and telephone book, besides keeping bank accounts, documents, papers, etc., and holding officers' and directors' meetings here. But it was an active and presumably a successful business and had much more to do; defendant's acts here were of the same nature, but its lack of success made them amount to less actually, but not as compared to the entire activity.

In the Mingus case the corporation maintained a formal resident agent in Delaware to comply with the law of that State, while it had its physical property

and conducted its mining operations in Utah. But the court held that from the facts (p. 532) "it is apparent that the general executive business of the defendant is carried on at its Philadelphia office and that the company is managed from there." The court rejected the attempt to differentiate between the conduct of its general business, milling and mining, and the conduct of its corporate business. Its latter activity was sufficient to subject it to service of process. Shambe v. Delaware & Hudson Railroad Co., 288 Pa. 240 (1927), is different forasmuch as there all the defendant did was to solicit freight; neither its general nor corporate business was here, even in part.

Granting that defendant was doing business in Pennsylvania in manner and comparative extent to make it subject to service of process here, this business admittedly ceased in November 1940. Is the company still subject to service here in April 1943? Thus, following section 93 of the A. L. I. Restatement of Conflict of Laws,[3] which we do, the ultimate query is whether the note was a piece of Pennsylvania business.

This is the bothering question, and to us the answer to it puts plaintiff out. The rule is a compulsion against it. Plaintiff had a note made in North Carolina, pay-

---

[3] The rule as set forth in the Restatement, §93, is: "A state can exercise through its courts jurisdiction over a foreign corporation which has done business within the state but has ceased so to do business at the time of service of process, as to causes of action arising out of the business done within the state, if, by the law of the state at the time when the business was done, the corporation by doing business in the state subjected itself to the jurisdiction of the state to that extent." The section is similar to the rule applying to a registered foreign corporation, which may not revoke the authority of the Secretary of the Commonwealth as its agent upon whom process may be served, so long as any liability remains outstanding against it in the Commonwealth. See Act of June 8, 1911, P. L. 710, sec. 2, 15 PS §3142, and Kelly et al. v. International Clay Products Co., 291 Pa. 383, 387 (1928).

able here, and by the terms could have done something about it after three months. It waited much longer, out of purpose or by inadvertence. Whatever the reason or lack of it, the fact is that it tarried and let much time pass; so much of it that in the meantime the maker company became inactive. And on the law we can do nothing about it, though we can see that the stopping of suit here appears to be a bar anywhere. We are afraid that it is plaintiff's own experience and for the result plaintiff must look to itself. General principles are implicit in whatever you do.

The suit is upon a note given by defendant to Mayberry at Spruce Pine, N. C., on February 5, 1937, admittedly before defendant began to do business here (February 19, 1937, according to plaintiff's answer to defendant's petition). It is made payable in Philadelphia three months after date. The place of the contract is therefore North Carolina.

". . . the place of the contract is the place where the last act necessary to the completion of the contract was done—that is, where the contract first creates a legal obligation . . .": 1 Williston on Contracts (rev. ed.), §97, pp. 309, 310. And see A. L. I. Restatement of Contracts, §74, and Staples v. Nott, 128 N. Y. 403 (1891). The note is a North Carolina transaction. The obligation was created and completed in North Carolina; the note was delivered there.

We must conclude the service is invalid since it was made on an officer of an unregistered foreign corporation which had ceased to do business in Pennsylvania, upon a cause of action which did not arise from business done in Pennsylvania during the period of its activity here.

Rule absolute. Service of the summons is set aside.