### SMITH v. HALL et al.
### Civ.A. No. 1473.

District Court, N. D. Texas,
Fort Worth Division.

July 29, 1948.

Cantey, Hanger, McKnight & Johnson, of Fort Worth, Tex., for plaintiff.

Thos. E. Scofield, of Kansas City, Mo., Seaberry & Hagman, of Weatherford, Tex., and Oliver Fannin, of Fort Worth, Tex., for defendants.

DOOLEY, Judge.

The plaintiff, Roland E. Smith, brought this suit against the defendant, Jesse E. Hall, Sr., doing business as Weatherford Spring Company (herein sometimes called original defendant), claiming unpaid commissions and breach of contract damages, relative to their written agreement dated January 1, 1946, whereby plaintiff became exclusive agent for the export sale of oil field equipment manufactured by defendant at Weatherford, Texas. Later the plaintiff amended his complaint to sue also the Weatherford Spring Company of Venezuela, C. A., a Venezuela corporation (herein sometimes called defendant company), organized in July 1947 by the other defendant and associates, and alleged that through collusion the two defendants were trying to circumvent the rights of plaintiff under said written contract. The summons issued against the defendant company was served by personal delivery thereof to Harriet Tucker, as agent of said defendant. The said defendant has filed a motion for dismissal, or in the alternative, to quash the purported service of process, on the grounds that it is not suable in this District, and in any event that there has been no valid service of process herein against it.

The pleadings show the aforesaid contract of January 1, 1946, and that for alleged good cause the original defendant

declared same terminated as of October 9, 1947, and the evidence shows that a written contract of that same date was executed between the two defendants granting to the defendant company sales rights in foreign markets for the oil field equipment manufactured by the original defendant, and since then said company has been continuously engaged in such export business; that said defendant has had and maintained as its only office in the United States a furnished business room in Weatherford, Texas, which, since September 23, 1947, has been in charge of said Harriet Tucker, a salaried employee, working full time, under the general supervision of its executive officers, and she has been its only agent, employee or representative resident in Texas or elsewhere in the United States; that said defendant's President, Elmer Hall, and Vice President, James Berry, have both been residents of Venezuela, and during the aforesaid time have infrequently visited in Weatherford, Texas; that its stationery used in the business activities at said office has carried the inscription, "Export and Quotation Office, 202 Bridge Street, Weatherford, Texas"; that the said employee, Harriet Tucker, has, at all times, sent and received much mail, and also used telephone and telegraphic facilities, in the regular course of business at said office, and in signing letters so sent, she has regularly and without any challenge, designated herself as "Secretary" or "Assistant Secretary" of said defendant, and in like form has signed purchase orders, invoices, export declarations, cargo insurance policies, and various other business papers for the defendant, and in one instance so signed an attestation of a written contract which the President also signed for the defendant company, but she began said practice on her own volition and without any formal appointment in such official capacity; that she installed and kept at said office, for the defendant company, a system of double entry business books, including journal and ledger, as well as numerous other office records and files, covering its business done at and through Weatherford, Texas; that said employee regularly sent out letters to prospective customers soliciting business, and quoted prices to inquirers, but in so doing was confined to a definite price list authorized by the President of the defendant company, and received orders for purchases from customers, and in turn issued purchase orders to the other defendant (who had an adjoining office), for the required supply of equipment, and sent signed notices of shipments of orders to the customers of the defendant company; that in the regular course of such transactions the said employee, although without discretion as to prices or other terms, made many contracts for the defendant company in the sale of said equipment for shipment to foreign markets, and also made other contracts for said defendant, such as shipping and cargo insurance contracts, and made small routine contracts for purchases of office supplies at discretion; that the defendant company kept an active bank account in Weatherford, Texas, to receive deposits and for checking purposes, and said employee made deposits of all customer remittances therein from time to time, and also drew checks thereon, which were countersigned by the other defendant, for the payment of the salaries of the President and Vice President of the defendant company, and her own salary, and the payment of invoices for purchases from the other defendant, and ocean freight bills, cargo insurance premiums, accounts incurred for telegraphic service, purchases from office supply stores in Weatherford, Texas, and generally, the miscellaneous routine expenses incurred by the defendant company in the United States; that the above business pattern of the defendant company has been the same all the time said employee has been in charge of said office in Weatherford, Texas, and she was still doing said work as its employee at the time the process in question issued herein was served on her as agent of the defendant company, and the record shows that said defendant has been doing a large and sustained business connected with its activities at the office in Weatherford, Texas.

The record shows that the business activities of the defendant company at Weatherford, Texas, have been neither casual or trivial, but instead have been a systematic and a regular course of commercial transactions. The said defendant's

office at Weatherford, Texas, has been a key place for its business functions, in keeping up convenient and efficient contacts with customers, expediting attention to orders, purchasing equipment for export, paying bills, contracting for ocean transportation and insurance, keeping books, and serving other miscellaneous purposes. The source of supply for its business was there located. In short, it is clear that a very important seat of the company's business centered at Weatherford, Texas. The realities compel the conclusion that it is, and has been, present at Weatherford, Texas, in this Judicial District, and was suable herein at the time it was made a defendant in this suit. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; Washington-Virginia R. Co. v. Real Estate Trust Co., 238 U.S. 185, 35 S.Ct. 818, 59 L.Ed. 1262; International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Barrow S.S. Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964; Certain-Teed Products Corporation v. Wallinger, 4 Cir., 89 F.2d 427; Frene v. Louisville Cement Co., 134 F.2d 511, 146 A.L.R. 926; Knutson v. Campbell River Mills, Ltd., D.C., 300 F. 241.

█ The remaining question is whether the defendant company has been validly served with process in this suit. The Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, are self-contained in certain provisions for the service of process on foreign corporations, and moreover adopt the procedure for such service authorized under the statutes of the particular state. The independent Federal provision is in Rule 4(d) (3), and the adoptive provision in Rule 4(d) (7) points to Art. 2031 of the Revised Statutes of Texas 1925, Vernon's Ann.Civ.St. art. 2031. The pertinent manner of such service as so authorized, inter alia, is through the person of a "managing agent" under said Rule 4(d) (3), and through the person of a "local agent" under said Art. 2031.

The employee in charge of the office at Weatherford, Texas, discharged manifold duties and day to day was practically the sole personal actor in and about a major part of the very business life of the defendant company. She held a confidential position. Her stature as a representative of the defendant cannot be decided by any abstract test, but must be judged in the light of the particular circumstances. The real circumstances in this instance contrast with what same would have been had this employee performed much the same duties under the eye of some superior officer, instead of in fact being placed at work by herself far from the headquarters of the executive officers of the defendant in South America. She was the only representative of the defendant in the United States. The said office excellently articulated the vital business relations between the two defendants. This employee's sense of identity and responsibility with the defendant company is indicated by her spontaneous adoption of the secretarial title, evidently with no doubt or hesitation whatever in her own mind. The significance of these circumstances cannot be decried by saying that her services were more or less clerical in nature. Such a large volume of business at this office hardly could have been transacted without some element of firsthand management guiding it. It would be a singular meander of the law to say that the defendant is vigorously present in this District, but that the one in charge of its business here is a mere factotum, without enough rank to be a medium for service against the company. Certainly the relations between the defendant and this employee have been such as to justify the assurance that any process which has been served on her as agent would be faithfully referred to the defendant company.

The provisions in the Federal Rules for service on managing agents of foreign corporations is simply a reproduction of similar provisions which had existed in the statutes of various states for many years antedating the Federal Rules. The Federal courts in very well considered opinions have held, in connection with such state statutes, that process had been served on "managing agents", who in their relations to the principal were quite comparable to the employee in this suit. My conclusion is that the employee, Harriet Tucker, ranked as a "managing agent" for the purpose of service of process against the

476

defendant company. Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33; United States Merchants & Shippers Ins. Co. v. Elder Dempster & Co., Ltd., 2 Cir., 62 F.2d 59; Toledo Computing Scale Co. v. Computing Scale Co., 6 Cir., 142 F. 919; Beach v. Kerr Turbine Co., D.C., 243 F. 706; Geo. Wm. Bentley Co. v. Chivers & Sons, Ltd., D.C., 215 F. 959; Palmer v. Chicago Herald Co., C.C., 70 F. 886; Hat-Sweat Mfg. Co. v. Davis Sewing-Machine Co., D.C., 31 F. 294; Williams v. Bruce's Juices, Inc., D.C., 35 F.Supp. 847.

In view of the above conclusion that the service of process herein on the defendant company is valid under Federal Rule 4(d) (3), I will not discuss the standing of said service under Art. 2031 of the Texas Statutes beyond saying that whatever else may be true of her representative capacity, the said Harriet Tucker, in my judgment, at least was a "local agent" of the defendant at the time in question, so that in any event the said service of process should be upheld under the terms of the state statute. Alley v. Bessemer Gas Engine Co., 5 Cir., 262 F. 94; Gray Co., Inc., v. Ward, Tex.Civ. App., 145 S.W.2d 650.

The defendant's said motion accordingly is overruled.