## AUGUSTE MOULIN *vs.* THE TRENTON MUTUAL LIFE AND FIRE INSURANCE COMPANY.

If a corporation, chartered in this state, open an office and transact business in another state, and afterwards withdraw its office and cease to transact business in that state, and after such withdrawal a suit is commenced against the company in such state, on a contract made therein, and process is served upon its officers when in that state, the corporation will be properly in court under such process.

---

This was an action of debt, brought upon a judgment obtained by the plaintiff against the defendants in the Supreme Court of the state of New York, in Erie county, on the eighth day of May, eighteen hundred and fifty-two, for fifteen hundred and forty-six dollars debt, and nine dollars costs.

The defendants pleaded that they had never been

The defendants pleaded, that they had never been served with process, or made appearance or defence to said suit in the state of New York; that at the commencement of said suit they were not residents or citizens of the state of New York, or existing as a corporation under and by virtue of its laws; that they kept no office, and did not transact any business there; that they were a corporation under and by virtue of the laws of New Jersey, where its president and officers resided and were citizens; that the president of said company was only accidentally in New York when he was served with process; by reason whereof the court there never obtained jurisdiction of the case. To this plea the plaintiff demurred, and the demurrer was overruled (4 *Zab.* 222). Thereupon the plaintiff filed the following replication:

"And the said plaintiff, as to the said plea of the said defendants by them secondly above pleaded, saith, that he, the said plaintiff, by reason of anything by the defendants in that plea alleged, ought not to be barred from having and maintaining his aforesaid action thereof against them, the said defendants; because, he saith, that the judgment mentioned in the above declaration was given and rendered upon a contract of insurance made and entered into by the defendants with the plaintiff in the state of New York, to wit, at Buffalo, in the county of Erie, in said state of New York, on the sixteenth day of November, in the year eighteen hundred and fifty, and was renewed by the said defendants with the plaintiff, in said state of New York, to wit, at Buffalo aforesaid, on the sixteenth day of May, eighteen hundred and fifty-one, and at the time of making the said contract of insurance, to wit, on the sixteenth day of November, eighteen hundred and fifty, and at the time of the renewal of said contract, to wit, on the sixteenth day of May, in the year eighteen hundred and fifty-one, the said defendants had offices and places of business in said state of New York, to wit, at Buffalo aforesaid, and also in the city of New York, in

the county of New York, and state of New York, and had agents at said office duly authorized by them, for them and in their names, to make contracts of insurance and for the renewal of insurance within the state of New York, and that said contracts upon which said judgment was recovered were made in such state of New York, by such agents so authorized and empowered to make such contract in said state of New York, and that at and before the times of entering into said contracts upon which said judgment is founded, and while said defendants had such offices and agents in the state of New York, said Joseph C. Potts, in said plea mentioned, was president of the defendants, and from time to time, by direction and authority of said defendants, went to the state of New York, and was in said state to attend to the affairs and business of said defendants in the said state of New York, in manner aforesaid, done by said defendants, through their agents in said state ; and this the said plaintiff is ready to verify," &c.

To this replication the defendants filed a demurrer and the plaintiff a joinder.

The case was argued before the CHIEF JUSTICE and Justices ELMER and HAINES, by *Zabriskie,* for the plaintiff, and *Dayton,* for the defendants.

The CHIEF JUSTICE. When this case was before the court on a former occasion, it was decided that when a corporation confines its business within the state by which it is chartered, the service of process upon one of its officers within the jurisdiction of another state is not service upon the corporation : and that even if such service of process were authorized by law of the state within which it was made, it would not here be regarded as a valid service, or as bringing the corporation within the jurisdiction of the court by whom it was issued.

In so deciding, we adhere to the familiar principles of

the common law, that a corporation has a legal existence only within the limits of the state by which it is created, and that its officers do not carry their official character or functions with them out of the state.   At the same time it ⌐ as distinctly intimated that the principle would not be held to apply to a corporation which did not confine its business within the state by which it was chartered, nor to the service of process upon such corporation, in accordance with the law of another state within which it held property or carried on its business.

If a corporation may sue within a foreign jurisdiction, it would seem consistent with sound principle that it should also be liable to be sued within such jurisdiction.   The difficulty is this, that process against a corporation must, at common law, be served upon the principal officer of the corporation within the jurisdiction of that sovereignty by which it was created.   The rule is founded upon the principle, that the artifical, invisible, and intangible corporate body is exclusively the creature of the law ; that it has no existence, except by operation of law, and that, consequently, it has no existence without the limits of that sovereignty, and beyond the operation of those laws by which it was created, and by whose power it exists. The rule rests upon a highly artificial reason, and, however, technically just, is confined at this day in its application within exceedingly narrow limits.   A corporation may own property, may transact business, may contract debts ; it may bring suits, it may use its common seal; nay, it may be sued within a foreign jurisdiction, provided a voluntary appearance is entered to the action.   It has then existence, vitality, efficiency, beyond the jurisdiction of the sovereignty which created it, provided it be voluntarily exercised.   If it be said that all these acts are performed by its agents, as they may be in a case of a private individual, and that the corporation itself is not present, the answer is, that a corporation acts nowhere, except by its officers

and agents. It has no tangible existence, except through its officers. For all practical purposes, its existence is as real, as vital, and efficient elsewhere as within the jurisdiction that created it. It may perform every act without the jurisdiction of the sovereignty that created it that it may within it. Its existence anywhere and everywhere is but ideal. It has no actual personal identity and existence as a natural person has, no body which may exist in one place and be served with process while its agents and officers are in another. Process can only be served upon the *officers* of a corporation within its own jurisdiction, not upon the corporation itself.

Process cannot be served upon the officer of a corporation in a foreign jurisdiction, because he does not carry his official character and functions with him. And yet the officers and agents of corporations do carry their official character and functions with them into foreign jurisdictions, for the purpose of making contracts and transacting the business of the corporation. The seal of a corporation, its distinguishing badge, at the common law the only evidence of its contracts, may be taken by its officers, and used within a foreign jurisdiction.

Doubts were formerly entertained whether a corporation could make a contract or maintain an action out of its own jurisdiction, or whether its property could be attached in a foreign jurisdiction. These questions have been long since settled, either by judicial construction or legislative enactment, in accordance with the reason of the thing and the usage of the commercial world. Sound principle requires that while the *powers* of corporations are world wide, while for all practical purposes they may exist and act everywhere, the technical rule of the common law, that they exist only within the jurisdiction of the sovereignty which created them, should be applied only within its strictest limits, and not be suffered to defeat the obvious claims of justice.

Vol. ii.            F

It is difficult to conceive (says Mr. Justice Rogers of the Supreme Court of Pennsylvania) that if corporations are artificial persons, if they can do all acts that natural persons may, if they can sue within a foreign jurisdiction, why they may not also be liable to suit in the same manner and under the same regulations as domestic corporations. *Bushel* v. *The Commonwealth Insurance Company* 15 *Serg. & Rawle* 176. This opinion is cited with approbation in *Ang. & Ames on Corp.* § 402.

The question now before the court is not upon the validity of the common law principle; to that we adhere. The suit is brought upon a judgment recovered in the state of New York upon a contract made by the corporation in that state. The process in the original action was served and the defendants' appearance effected in strict conformity with the mode prescribed by the laws of that state. It is admitted by the pleadings that the individual upon whom the process was served, was president of the corporation when the contract was made and when the process was served. The simple inquiry is, whether the statute of the state of New York, which authorizes the service of process in the mode adopted in this case, is so unreasonable, so contrary to natural justice and the principles of natural law, that it ought not to be sanctioned.

The utmost that can be said is, that it is a deviation from the technical rule of the common law. The defendants were not condemned unheard and without an opportunity of making defence. The process was served precisely upon the officer and in the mode that it would have been had the process been served in this state. The corporation, it is true, were drawn into the forum of a foreign sovereignty to litigate; but having voluntarily entered that jurisdiction, and transacting business there; having invoked the comity and the protection of the laws of that sovereignty for their own benefit, can they complain that

the contracts there made are enforced within that sovereignty and in accordance with its laws? Does it involve the violation of any principle of natural justice or that protection which is due to the citizens of our own state? If the corporation were carrying on its business within the state of New York at the time of the service of the process, the court has already intimated its opinion that the service would be valid. " I think," says Justice Elmer, " under such circumstances natural justice requires that corporations should be subject to the laws of the state whose comity they thus invoke. For the purpose of being sued, they ought to be regarded as voluntarily placing themselves in the situation of citizens of that state." 4 *Zab.* 234. And such it seems should be the rule independently of any express statute authorizing the mode of serving process. *Ang. & Ames on Corp.* § 402, (*ed.* 1852.) The fact that the corporation had ceased to transact business, whatever technical difficulty it may seem to create, cannot alter the reason and justice of the proceeding.

It is said truly by the defendants' counsel, that the question is one of jurisdiction, and that the sole inquiry is, whether the defendants were within the jurisdiction of the court by which the judgment was rendered? But the question obviously resolves itself into another, *viz.* whether the process was served in such manner as to effect their appearance in court? The statute of New York declares that it was; and upon purely technical grounds, where no injustice was done, this court is called upon to decide that it was not so served.

It is worthy of remark, that the courts of Westminister hall have gone quite as far in sustaining the validity of foreign judgments as the courts of the states of this Union have done in sustaining the judgments of their sister states under the provisions of the federal constitution; and it may be well to be on our guard, lest, in our zeal to maintain state rights, we deny to the courts of our sister

states jurisdiction in cases where it would be freely conceded to the courts of foreign governments.

Thus in *Douglass* v. *Forest*, 4 *Bing.* 686, the Court of Common Pleas held that an action may be maintained in England, upon a Scotch judgment recovered upon a debt contracted in Scotland, by a native of that country, though the defendant was abroad when the cause of action accrued, though no process was served upon him, and he never knew of the existence of the action. Chief Justice Best, in delivering the opinion of the court, said, if these decrees are repugnant to the principles of universal justice, this court ought not to give effect to them ; but we think they are perfectly consistent with the principles of justice

In *Becquet* v. *MacCarthy*, 2 *Barn. & Ad.* 951, the Court of Kings Bench held that an action might be maintained upon a judgment recovered in the island of Mauritius, against an English subject formerly resident there, but who when the suit was commenced, resided at the Cape of Good Hope, though process was not served upon the defendant ; it appearing by the law of the island, that process in such case might be served for him upon the king's attorney general. It was insisted that it was contrary to the principles of natural justice that any one should be condemned unheard and in his absence. B; t the court said, there may, perhaps, be some deficiency in the law ; but as the law of the island is, that the process shall be served upon the public officer it must be presumed that he would do whatever was necessary in the discharge of his public duty, and we cannot take upon ourselves to say that the law is so contrary to natural justice as to render the judgment void in a case where the process was so served. See, also, *Ferguson* v. *Mahon*, 11 *Ad. & El.* 179 ; *Cavan* v. *Stewart*, 1 *Stark.* 525 ; *Bruce* v. *Wait*, 1 *Man. & Gran.* 1.

These cases, it is admitted, are not applicable to this case in all its aspects, but they are authority to show that,

by the courts of adjudication in the courts of Westminster hall, a suit may be maintained upon a foreign judgment recovered in a country of which the defendant was a citizen, or where he had once resided, according to the laws of that country, though process was never, in fact, served upon the defendant; and that such judgment will not be deemed void, as repugnant to natural justice. In support of these positions, alone, they are relied upon as authority.

I am of opinion that the demurrer should be overruled.

ELMER, J. The question now presented by the demurrer to the replication put in by the plaintiff since the case was first decided, is, whether a judgment obtained in a superior court of the state of New York against a corporation of this state, which had opened an office and made contracts in the former state, upon a contract so made therein, by the service of process on the president, who was president when the contract was made, but who was only accidentally in that state when the process was served, the company having in the intermediate time withdrawn its offices, and ceased to transact business therein, ought to be regarded as binding upon the parties here.

Adhering to the opinion, formerly expressed, that natural justice requires the officers and agents of corporations which transact their business in other states, to be subject to the process of that state, as representatives of the company, I think the case, as now presented, is one in which we ought to hold that the jurisdiction of the court was properly obtained. The only doubt is, whether the withdrawal of the company's offices and business before the commencement of the suit must be regarded as depriving the president of his proper character, as such, in the state of New York, when he subsequently visited it. The visit being accidental, and not connected with the business of the company, it is said he did not represent the company. But having been

once avowedly sent into the state upon its business, it requires no straining to hold, that if afterwards in the state at all, he ought to be considered as still clothed with his official character, so far as the business formerly transacted therein is concerned. This is necessary to prevent an evasion of the duties and liabilities incurred by the original entry, and to do complete justice to the citizens of the state whose comity was originally invoked. The process was served on the individual who in point of fact was the president at the time, and the suit was on a contract entered into within the state while he was president. To hold the company bound by a notice thus served involves no danger of doing it injustice.

It has been strongly insisted, by the counsel of defendant, that if we hold the company bound by this judgment, we must, upon the same principle, hold that every citizen of this state who goes into another state, and makes a contract there, so far makes himself a citizen of that state that he would be bound by a suit on a contract thus made, commenced by means of a notice published in a newspaper, if the laws of that state happen to sanction such a procedure. I do not think this follows. Corporations hold a very different position from individual citizens. The latter always carry with them their personal rights and responsibilities. While the former confine their business to the state creating them, and where they have their proper location, we hold that their officers are not clothed with their official character out of its limits, so that as no rights are carried beyond those limits, neither are their responsibilities. But when a corporation thinks proper to invoke the comity of another state, and transacts its business there, they ought to be held to have voluntarily submitted themselves to the laws of that state, not only while their officers are within the state about its business, but when they subsequently go there. Whether a corporation thus acting would be held bound by a newspaper notice.

is not involved in this case, and is not meant to be affirmed ▪ · denied.

⸹ I am of opinion that, upon the facts now admitted by the pleadings, the plaintiff is entitled to judgment, and that the demurrer must be overruled.

HAINES, J., concurred.

CITED in *Thompson* v. *Whitman,* 18 *Wall.* 469; *Hill* v. *Mendenhall,* 21 *Wall.* 455.