25 N.J. Super. 248 (1953)
96 A.2d 92
MAYFLOWER INDUSTRIES, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THOR CORPORATION, AN ILLINOIS CORPORATION, DEFENDANT-RESPONDENT, AND TEL-DISCO, INC., A NEW JERSEY CORPORATION, DEFENDANT, AND MORRIS S. SEGAL CORPORATION, DEFENDANT-APPELLANT, AND MORRIS S. SEGAL AND SEAMARK REALTY COMPANY, ADDITIONAL DEFENDANTS ON COUNTERCLAIMS OF THOR CORPORATION.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1953.
Decided March 26, 1953.
*249 Before Judges EASTWOOD, FRANCIS and JAYNE.
Mr. Thomas J. Brogan argued the cause for the defendant-respondent Thor Corporation.
Mr. Daniel G. Kasen argued the cause for the defendant-appellant Morris S. Segal Corporation (Messrs. Kasen, Schnitzer & Kasen, attorneys; Mr. Morris M. Schnitzer, of counsel).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
Prior to March 1950 Mayflower Corporation was a distributor of Thor products in the State of New Jersey. The Morris S. Segal Corporation, incorporated in New York, was its sole sales agent for Thor products and other appliances and furniture sold by Mayflower in the State of New Jersey. The Mayflower Corporation having instituted its action in the Chancery Division to restrain the Thor Corporation from terminating its franchise, obtained an ex parte restraint on March 20, 1950. With the consent *250 of Mayflower, the restraint was vacated in May 1951. Mayflower's motion to dismiss the Thor Corporation's counterclaim for malicious prosecution was denied. Thereafter, Mayflower sought unsuccessfully to reinstate its complaint. Mayflower Industries v. Thor Corp., 17 N.J. Super. 505 (Ch. Div. 1952), affirmed 20 N.J. Super. 39 (App. Div. 1952), appeal dismissed (Sup. Ct. Sept. 30, 1952).
Subsequently, the Thor Corporation was granted leave to file supplemental counterclaims, thereby making the Segal Corporation, Morris S. Segal, individually, and Seamark Realty Company, a New Jersey corporation, additional parties defendants. Thor's supplemental counterclaim against Segal Corporation is grounded in tort, charging malicious prosecution based upon acts and conduct of the Segal Corporation during a period of time when it was assertedly doing business in New Jersey.
On June 27, 1952 a summons and supplemental counterclaims were served upon Segal Corporation by making service thereof on Morris S. Segal, its president, at his home in Deal, New Jersey. Incidentally, Mr. Segal was also president of Mayflower Corporation.
Segal Corporation moved to dismiss the counterclaim for insufficiency of service of process and lack of jurisdiction over it. Following a hearing at which the parties submitted their respective affidavits on the question of whether the Segal Corporation had been or was doing business in New Jersey and the oral testimony of a witness for the Thor Corporation, the Chancery Division concluded "that the Morris S. Segal Corporation is doing business within the State, and that service of process upon its president was legal and proper service" and found that the corporation "was present in the State at the time the cause of action arose." The Segal Corporation appealed from the ensuing order.
In its motion for dismissal of the counterclaim, the Segal Corporation relied upon the affidavit of Morris S. Segal, who stated in substance that the Segal Corporation had never qualified nor was it authorized to do business in New Jersey; *251 that the corporation acted as sales agent for other companies and all orders solicited for them in New Jersey were subject to acceptance by the principal, outside the State.
Owen G. Nugent, vice-president of Thor Corporation, stated by affidavit and in oral testimony that Morris S. Segal owned the Segal Corporation; that Segal Corporation was the exclusive sales agent of Mayflower Corporation and conducted its business from offices in Newark, New Jersey; that since Mayflower Corporation was a New Jersey corporation, any orders solicited for it by Segal Corporation were accepted here; that numerous salesmen reported for work with the Segal Corporation at the Newark office, and that on occasions Mr. Segal held meetings with Thor representatives in the Newark office; that as of February 7, 1952 it had its name on the door at 317 Halsey Street, Newark, New Jersey, as evidenced by a photograph thereof, where Mayflower also had its offices; that it had a telephone in Newark which was listed in the Newark telephone directory; that it maintained a bank account in Newark, New Jersey, and introduced a letter he received from Segal Corporation signed by Morris S. Segal, referring to the "New Jersey Division" of Segal Corporation.
The Segal Corporation contends that it was not doing business in this State on June 24, 1952 when Thor filed its supplemental counterclaim, and, therefore, being a foreign corporation, it was not amenable to process in New Jersey.
The issue here is whether a foreign corporation must be doing business in this State at the time the action is instituted in order to subject it to the jurisdiction of the courts of this State, or whether  assuming that service may be made upon its representative  the test of proper service is that the corporation was doing business in New Jersey when the cause of action arose and that it arose out of the actions of the foreign corporation while so engaged in business in this State.
Notwithstanding the fact that Segal Corporation was not registered as a foreign corporation authorized to do business in New Jersey, the evidence in the record makes it *252 abundantly clear that it was, in fact, doing business in New Jersey at the time the cause of action arose. The fact that it withdrew from New Jersey thereafter does not invalidate Thor's service of process upon its president, a New Jersey resident.
It is the general rule that, when it voluntarily enters the State and engages in business there, a foreign corporation tacitly submits itself to the valid laws of such state and to the jurisdiction and process of its courts to the extent required by such laws. 23 Am. Jur., Foreign Corporations, sec. 495, p. 498.
"* * * In accordance with the general rule that a foreign corporation engaging in such business will be presumed to have accepted the valid conditions imposed by the state and to have incorporated them in its contracts there made, the cases contain many expressions to the effect that such a corporation which does business in a state thereby assents to the obtention of jurisdiction over it by the courts therein in suits growing out of its acts and transactions therein, through any valid personal or substituted service, if provision is made by the law of the state for such acquisition of jurisdiction over foreign corporations which do business therein. * * *" 23 Am. Jur., supra, p. 499.
Cf. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).
In Knutson v. Campbell River Mills, 300 Fed. 241 (Wash. 1924), it was held that, under the proofs, a substantial part of the defendant's business was transacted in the foreign jurisdiction and the tort having been committed by the agent of the defendant in prosecuting its business, "it would be `intolerable injustice' to say that the defendant is not suable here," and that the court entertained no doubt that the foreign corporation having committed the tort in a state where it was not licensed to do business, if found within that state in the person of an officer or agent, upon whom process may be served, may be sued there.
Early in the judicial history of this State the question of jurisdiction over a foreign corporation was presented where *253 service had been made upon an officer of that corporation present within the State at the time the action was instituted, and where the corporation had departed the State prior thereto after having transacted business within that state. In Moulin v. Trenton Mut. Life & Fire Insurance Company, 25 N.J.L. 57, 62 (Sup. Ct. 1855), in an opinion by Chief Justice Green, it was held that a foreign corporation, having voluntarily entered the jurisdiction of another state and transacted business therein and having invoked the comity and the protection of the laws of that state for its own benefit, cannot complain that the contracts there made are not within the jurisdiction of the courts of that state. In the Moulin case, the court held further that "The fact that the corporation had ceased to transact business, whatever technical difficulty it may seem to create, cannot alter the reason and justice of the proceeding." In a concurring opinion, Mr. Justice Elmer stated that "The process was served on the individual who in point of fact was the president at the time, and the suit was on a contract entered into within the state while he was president. To hold the company bound by a notice thus served involves no danger of doing it injustice." This holding was followed in the case of Groel v. United Electric Company of New Jersey, 69 N.J. Eq. 397 (Ch. 1905) and Nat'l Condensed Milk Co. v. Brandenburgh, 40 N.J.L. 111 (Sup. Ct. 1878).
Natural justice requires that a foreign corporation which transacts its business in another state should be subject to the service of process of that state upon its representatives arising out of the conduct of its business here. Norton v. Berlin Iron Bridge Co., 51 N.J.L. 442 (Sup. Ct. 1889); Brown v. John P. Smythe & Co., 98 N.J. Eq. 206, 208 (Ch. 1925); 113 A.L.R. 15, 24, 37.
The judgment is affirmed.