30 N.J. Super. 38 (1954)
103 A.2d 257
MAUD DAOUD, INDIVIDUALLY AND AS SOLE SURVIVING PARTNER OF DAOUD BROS., A CO-PARTNERSHIP, AND AS EXECUTRIX OF THE LAST WILL AND TESTAMENT OF GEORGE J. DAOUD, DECEASED, PLAINTIFFS,
v.
KLEVEN INVESTMENT CO., INC., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 11, 1954.
*42 Mr. Philip G. Steel and Mr. Irvin M. Lichtenstein, for plaintiffs.
Mr. Augustus C. Studer, Jr. (Messrs. McCarter, English & Studer, attorneys), for defendant Kleven Investment Co., Inc., a Massachusetts corporation, appearing and moving on *43 its behalf solely for the purpose of contesting the jurisdiction of this court.
HANEMAN, J.S.C.
This is a motion seeking to quash and set aside the service of summons and complaint on the defendant, on the ground that the attempted service of process was illegal, invalid and in violation of the rights guaranteed to the said defendant under the Fourteenth Amendment to the United States Constitution, and was illegally and improperly made in violation of R.R. 4:4-4(d).
The facts as disclosed by the pleadings and affidavits, and which may be considered as proved for the purposes of this motion, are as follows:
It is admitted that the defendant was incorporated under the laws of the State of Massachusetts and has never been authorized by the State of New Jersey to transact business in this State.
The complaint alleges that the defendant made loans to the plaintiffs Daoud Bros. and received and obtained from them various notes, evidences of obligations, etc., which said transactions were tainted with usury, and that the defendant received as a part of said usurious transactions certain valuable pieces of jewelry, precious gems and personal property of great value. During the years of 1951, 1952 and 1953 the defendant transacted and conducted business operations and transactions in the State of New Jersey. The complaint does not allege in what year or years the specific transactions here sued upon were had between them and the defendant.
The plaintiffs demand by way of judgment, inter alia, discovery, accounting, appointment of a receiver, restraint against hypothecating, discounting or suing upon any of the obligations delivered to the defendant, and monetary damages.
Plaintiffs submit a photostatic copy of a report made by the defendant to the Commonwealth of Massachusetts, Department of Corporations and Taxation, to prove the nature of defendant's business, in which the following legend appears: "Kind of business  Investments."
*44 The defendant generally denies that the transactions referred to constituted the transaction of any business, and specifically denies that it was engaged in any activity whatever in the State of New Jersey subsequent to September 30, 1952. The defendant further categorically denies that it was an "investment company" in the contemplation of N.J.S.A. 17:16A-1, and after specifically setting forth the type of business conducted by it, recites as follows:
"(4) The defendant company has never been engaged in the business of making, issuing or guaranteeing investment contracts. It has never issued any securities to the public, nor has it ever made any offerings of any securities to the public. The filing of the Statement of Condition of the defendant company, referred to by the plaintiffs' attorneys, was not required to be filed in the Commonwealth of Massachusetts by any laws of that Commonwealth dealing with investment companies, or companies engaged in the investment business, as defined in N.J.S. 17:16A-1, subdivisions (a) and (c), respectively."
The service upon which complaint is here made was effectuated in the following manner, (1) by leaving a copy of the summons and complaint in the office of the Secretary of State of New Jersey in the State House, Trenton, New Jersey, together with a fee of three dollars, with Ernest R. Kerr, chief clerk in said office, and (2) by leaving a copy of the summons and complaint in the office of the Commissioner of Banking and Insurance of the State of New Jersey, in the State House Annex, Trenton, New Jersey, together with a fee of two dollars, with John T. Connolly, Deputy Commissioner of Banking and Insurance.
Under date of November 13, 1953 Ernest R. Kerr, Chief Clerk, Secretary of State, wrote to Lawrence E. Cooke, secretary, Kleven Investment Co., Inc., 209 Washington Street, Boston, Massachusetts, as follows:
"I am herewith enclosing copy of summons and complaint in re: Maud Daoud, etc. vs. Kleven Investment Co., Inc., which has been served on me. Same is sent to you in pursuance with the provisions of Chapter 124 of the Laws of 1900, a copy of which is also enclosed."
*45 Under date of November 13, 1953 John T. Connolly, Deputy Commissioner of Banking and Insurance of the State of New Jersey, sent a letter addressed to Mr. Lawrence E. Cooke, secretary, Kleven Investment Co., Inc., 209 Washington Street, Boston, Massachusetts, as follows:
"Enclosed is a copy of summons and complaint in the matter of Maud Daoud, individually and as sole surviving partner of Daoud Bros. a co-partnership and as executrix of the last will and testament of George J. Daoud, deceased, plaintiffs vs. Kleven Investment Co., Inc., Defendant, which were this day served upon the Commissioner of Banking and Insurance.
The enclosed summons and complaint are being sent to you by this Department as required by the revised statutes without attempting to pass on the legal efficacy thereof."
Plaintiffs seek, in brief, to sustain the validity of the service upon the defendant upon the following bases:
1. Since the defendant is a foreign corporation doing business in New Jersey without express permission had from this State, it has, by implication, consented to make itself amenable to the jurisdiction of the courts of this State and is estopped from denying the efficacy of service upon the Secretary of State who would have been its authorized agent or attorney for that purpose under N.J.S. 2A:15-26 had it complied with the laws concerning the licensing of foreign corporations for the transaction of business in New Jersey. The failure of the defendant to so appoint said public official constitutes an election to accept him as such agent.
2. In the light of the provisions of N.J.S.A. 14:15-5, which is a reciprocal and retaliatory statute, and the provisions of the Annotated Laws of Massachusetts, vol. 6, chapter 181, sections 3 and 3A, the defendant is presumed to have appointed the Secretary of State of the State of New Jersey as its agent.
3. Service was made upon the Commissioner of Banking and Insurance in conformity with N.J.S. 2A:15-31.
In order to dispose of plaintiffs' first contention, it becomes necessary to consider generally the question of service upon the agent of a foreign corporation transacting business in a State, without express permission first had to that end, *46 and the application of those principles to the pertinent rules and statutes.
Express provision for service upon a foreign corporation is made in R.R. 4:4-4(d) and N.J.S. 2A:15-26. It is conceded that plaintiffs did not make service as required under R.R. 4:4-4(d) and hence it will not be necessary to discuss the provisions of this rule, except as hereafter stated.
Although originally a foreign corporation not authorized or licensed to transact business in a State could be sued only in the jurisdiction of its incorporation, it is now recognized that such corporation may be sued in the foreign jurisdiction. Cowell v. Colorado Springs Co., 100 U.S. 55, 25 L.Ed. 547 (1879); American & Foreign Christian Union v. Yount, 101 U.S. 352, 25 L.Ed. 888 (1880); Canada Southern Ry. Co. v. Gebhard, 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883); Baltimore & O.R. Co. v. Harris, 12 Wall. 65, 79 U.S. 65, 20 L.Ed. 354 (1871); Barrow S.S. Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898).
The theory upon which courts of a State first assumed jurisdiction of a foreign corporation carrying on business within its confines without a license to do such business and without an agent specifically appointed for the service of process, was that of implied consent to such jurisdiction through the "presence" of such corporation within the State. St. Clair v. Cox, 106 U.S. 350, 27 L.Ed. 222 (1882); St. Louis S.W.R. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486 (1912).
Primarily and basically, the question is one of due process. In order for the foreign state to acquire jurisdiction the attempted service must comply with the due process clause of the Fourteenth Amendment of the United States Constitution, and be reasonably calculated to give notice to the defendants. There must be something more to justify service upon a foreign corporation than an implied consent to jurisdiction arising from the corporation having at some time transacted business within the confines of that State.
*47 The theory of personal jurisdiction upon an individual in an action in personam is ordinarily derived from the power over an individual defendant consequent upon his presence within the State of the forum, and his presence within the territorial jurisdiction of the court at the time of service of the summons and complaint is a prerequisite to the rendition of a personal judgment binding upon him. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877).
Similarly, in order to obtain legal and valid service upon a foreign corporate defendant, it must be present in the State where such service is sought to be made. It is, of course, not possible for a corporate defendant itself to be physically present since the corporate personality is a legal fiction. The only manner in which its presence can be manifested is by the activities of those authorized to act on its behalf in the transaction of business for it.
In Philadelphia & R.R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1910), the court said:
"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent. St. Louis Southwestern R. Co. [of Texas] v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486, 488, Ann. Cas. 1915B, 77."
See also Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1922).
In Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, at page 575 (1951), the court said:
"`There is jurisdiction in personam over a foreign corporation only if it is doing business in the state through its agents, and then only if there is service of process within the state upon a duly authorized officer or agent of the corporation. Roll-O-Matic, Inc. v. J.B. Marshall, Inc., 117 N.J.L. 463, Consolidated Textile Corp. v. Gregory, 289 U.S. 85, 53 S.Ct. 529, 77 L.Ed. 1047; Washington-Virginia Railroad Co. v. Real Estate Trust Co., 238 U.S. 185, 35 S.Ct. 818, 59 L.Ed. 1262; James-Dickinson Farm Mortgage Co. v. Harry, 273 U.S. 119, 47 S.Ct. 308, 71 L.Ed. 569; Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. *48 250, 69 L.Ed. 634. In the absence of the element of consent, in one form or another, the doing of business is indispensible to the fulfillment of the requirement of due process of law guaranteed by the Fourteenth Amendment of the Federal Constitution. Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910. The state's jurisdiction in personam does not extend beyond its own borders. Process in actions of this class does not run from one state to another. Pennoyer v. Neff, 95 U.S. 714; 24 L.Ed. 565.
"Doing business" is a term that is not susceptible of precise definition automatically resolving every case. Each case turns upon its own circumstances. The determinative is the essence of the transaction or series of transactions.'"
See also Yedwab v. M.A. Richards Corp., 137 N.J.L. 448 (Sup. Ct. 1948); A & M Trading Corp. v. Pennsylvania R. Co. 13 N.J. 516 (1953); Porcelli v. Great Atlantic & Pacific Tea Co., 128 N.J.L. 603 (Sup. Ct. 1942).
In International Shoe Co. v. Washington, 326 U.S. 310, at page 316, 66 S.Ct. 154, at page 158, 90 L.Ed. 95 (1945), the court said:
"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, Klein v. Board of Tax Sup'rs, 282 U.S. 19, 24, 51 S.Ct. 15, 16, 75 L.Ed. 140 [143], 73 A.L.R. 679, it is clear that unlike an individual its `presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far `present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms `present' or `presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there."
See also Bank of America v. Whitney Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594 (1922); International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 (1914).
*49 It follows, therefore, that in order to acquire personal jurisdiction over a foreign corporation such corporation must be present, i.e., transacting business in such state through its agents.
The question which next naturally suggests itself is, when must the corporation be so present? Is it sufficient to determine that the corporation was present at the time that the cause of action arose, or must it have been present when service was made? Paraphrased, the propounded inquiry could be stated  Is it necessary that the corporate defendant shall have been doing business when the attempted service was made?
It is not necessary to decide upon this motion whether the acts alleged in the complaint to have occurred prior to the commencement of this suit constitute the transaction of business, since it is not denied that no business was transacted for at least one year prior to the purported service. We prefer to rest our opinion on the fact that the defendant was not present (not transacting business in this State) for at least one year prior to the alleged service.
Again, comparing the service upon a foreign corporation with the service upon a non-resident individual, it is vital, consistent with due process, that such corporate defendant, as well as such non-resident individual, be personally present in the jurisdiction of the forum when service of process in an action in personam is had.
In Consolidated Textile Corp. v. Gregory, 289 U.S. 85, at page 88, 53 S.Ct. 529, at page 530, 77 L.Ed. 1047 (1932), the court said as follows:
"In order to hold a foreign corporation not licensed to do business in a state responsible under the process of a local court the record must disclose that it was carrying on business there at the time of attempted service. International Harvester Co. [of America] v. [Commonwealth of] Kentucky, 234 U.S. 579, 583, 585, 34 S.Ct. 944, 58 L.Ed. 1479 [1481, 1482]. (Italics mine.)
In People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 234, 62 L.Ed. 587 (1917), service *50 was attempted upon one W.R. Irby. The facts as disclosed by the opinion were as follows:
"The testimony shows that up to November 30, 1911, the American Tobacco Company had a factory in New Orleans for the manufacture of tobacco and cigarettes known as the W.R. Irby Branch of the American Tobacco Company, of which W.R. Irby was manager. Under the law of the State it had filed in the office of the Secretary of State an appointment of W.R. Irby as agent, upon whom service of process might be made.
On November 16, 1911, the Circuit Court of the United States for the Southern District of New York made a decree dissolving the American Tobacco Company. Among other things that decree provided that the American Tobacco Company should convey its W.R. Irby Branch to a company to be formed and known as the Liggett & Myers Tobacco Company. Conveyances were made to carry out this purpose.
The American Tobacco Company by an instrument executed by Mr. Hill, its vice president, revoked the authority of W.R. Irby as its resident agent, and filed the revocation of authority in the office of the Secretary of State of Louisiana on December 15, 1911. W.R. Irby testified that thereafter he was the manager of the Liggett & Myers Tobacco Company, and that he had no connection whatsoever with the American Tobacco Company, nor had he drawn any salary from that company since December 1, 1911."

* * * * * * * *
"Upon the broader question, we agree with the District Court that the American Tobacco Company at the time of the attempted service was not doing business within the State of Louisiana."
The court there said as follows:
"The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted. Philadelphia & R.R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; St. Louis Southwestern R. Co. [of Texas] v. Alexander, 227 U.S. 218, 226, 33 S.Ct. 245, 57 L.Ed. 486 [488], Ann. Cas. 1915B, 77."
See also Rosenberg Bros., Inc. v. Curtis Brown, supra; Bank of America v. Whitney Central National Bank, supra.
*51 In Mayflower Industries v. Thor Corp., 25 N.J. Super. 248, at page 251 (App. Div. 1953), however, the court said as follows:
"The issue here is whether a foreign corporation must be doing business in this State at the time the action is instituted in order to subject it to the jurisdiction of the courts of this State, or whether  assuming that service may be made upon its representative  the test of proper service is that the corporation was doing business in New Jersey when the cause of action arose and that it arose out of the actions of the foreign corporation while so engaged in business in this State.
Notwithstanding the fact that Segal Corporation was not registered as a foreign corporation authorized to do business in New Jersey, the evidence in the record makes it abundantly clear that it was, in fact, doing business in New Jersey at the time the cause of action arose. The fact that it withdrew from New Jersey thereafter does not invalidate Thor's service of process upon its president, a New Jersey resident."
It is to be noted in this case that the lower court found "that the Morris S. Segal Corporation is doing business within the State." This conclusion, that the corporate defendant was so transacting business within the State at the time of service, was not reversed by the Appellate Division. The volunteered statement of that court concerning the effectiveness of service where a foreign corporation was not doing business in this State at that time, is dicta, as such a statement of facts was not before the court for determination.
In order to obtain jurisdiction in personam over a foreign corporation it is essential that the corporation be present in the State of the forum at the time of the service of process in connection with said suit, i.e., that said corporation was transacting or doing business in said State at that time. The state of proofs here disclose that the defendant had not been present in this State for more than one year prior to the alleged service. This is a vital defect and hence service is ineffectual and invalid.
In addition to the requirement that a foreign corporation must be "present" when service is made, there is a second vital requirement, i.e., service must be made upon *52 an authorized agent. Since a corporation has no actual corporeal existence but exists only because of a legal fiction, it is necessary to effectuate service upon an agent. An agent may be an actual agent of such corporation, or some person so designated by statute for the purpose of service. Service as above noted was made upon the Secretary of State.
There is no provision by way of statute or rule designating the Secretary of State an agent upon whom process may be served for a foreign corporation which is transacting business in this State without official authorization theretofore had.
N.J.S. 2A:15-26 provides in part as follows:
"In addition to any other method of service duly provided, process in any action commenced in any of the courts of this state against a domestic corporation or a foreign corporation authorized to transact business in this state may be served upon the secretary of state or upon the chief clerk in his office, when * * *
Service upon the secretary of state or his chief clerk as herein provided shall be had only as long as the circumstances authorizing such service shall continue."
Patently this is authority to serve the Secretary of State only when a foreign corporation has been authorized to do business in this State, and even then only so long as additional facts are extant. In the normal and general course of events such service is not authorized.
R.R. 4:4-4(d) provides as follows for normal service:
"(d) Upon a domestic or foreign corporation, by serving, in the manner prescribed in paragraph (a), an officer, director, trustee or a managing or general agent; or if service cannot be made upon any of the foregoing and if there is no office or place of business within this State, by serving any servant of the corporation within this State acting in the discharge of his duties; or by delivering a copy of the summons and complaint to any person authorized by appointment or by law to receive service of process on behalf of the corporation; or by leaving a copy of the same at the registered office of the corporation with any person in charge thereof."
The service provided for by said rule applies to foreign as well as domestic corporations and is effective whether or *53 not a foreign corporation has been authorized to do business in this State.
The Secretary of State is not an "authorized agent." The agency of a third person, having no business or other connection with a principal, to accept service cannot be implied. There must be some legal connection or relationship between the principal and the agent.
In Weiss v. Shapiro Candy Mfg. Co., Inc., 126 N.J.L. 71, at page 73 (E. & A. 1941), the court said:
"Only by due process of law may courts acquire jurisdiction over parties, and our statute must be construed in the light of that constitutional principle. When a statute refers to persons whose employment by a corporation may give them no representative character whatever, the courts confined those general terms in such a way as will uphold the jurisdiction which they are asked to exercise. Carroll v. New York, etc., Railroad Co., 65 N.J.L. 124. The ultimate question is whether the foreign corporation has given a person a representative character inclusive of receiving service of process, either generally or specifically, in a given case. Massachusetts Protective Association v. Freund, 116 N.J.L. 65."
See also I. Rokeach & Sons, Inc. v. Krichman, 125 N.J.L. 477 (Sup. Ct. 1940); Yedwab v. M.A. Richards Corp., 137 N.J.L. 448 (Sup. Ct. 1948); Taylor v. H.A. Thrush & Co., 127 N.J.L. 451 (Sup. Ct. 1941); Porcelli v. Great Atlantic & Pacific Tea Co., 128 N.J.L. 603 (Sup. Ct. 1942); Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571 (1951); A & M Trading Corp. v. Pennsylvania R. Co., 13 N.J. 516, 100 A.2d 513 (1953).
People's Tobacco Co. v. American Tobacco Co., supra, presents a case almost parallel to that sub judice, since there, as here, service was attempted upon the Secretary of State. The court there held such service invalid, as the Secretary of State was not designated either by statute or rule as an authorized agent of the corporation for the service of process.
The service upon the Secretary of State would violate the due process requirement of the Fourteenth Amendment as it offends the "traditional notions of fair play and substantial justice," and is invalid. For this reason, as well, the service upon the Secretary of State will be quashed.
*54 In the light of the foregoing, the service upon the Secretary of State is deficient in two particulars which are basic and vital requirements for legal and valid service, i.e., (1) the corporation was not present in the State at the time of the purported service, and (2) service was not had upon an authorized agent of the defendant.
The plaintiffs' second argument, that by virtue of the retaliatory and reciprocal provisions of the New Jersey statute, N.J.S.A. 14:15-5, the provisions of volume 6, chapter 181, sections 3, 3A of the Annotated Laws of Massachusetts are to be presumed to be provisions of a New Jersey statute applying to foreign corporations not authorized to do business in this State, and that therefore a service on the Secretary of State is valid, is without legal foundation.
N.J.S.A. 14:15-5 reads as follows:
"When, by the laws of any other state or nation, any other or greater taxes, fines, penalties, licenses, fees or other obligations or requirements are imposed upon corporations of this state, doing business in such other state or nation, or upon their agents therein, than the laws of this state impose upon their corporations or agents doing business in this state, so long as such laws continue in force in such foreign state or nation, the same taxes, fines, penalties, licenses, fees, obligations and requirements of whatever kind shall be imposed upon all corporations of such other state or nation doing business within this state and upon their agents here, but nothing herein shall be held to repeal any duty, condition or requirement now imposed by law upon such corporations of other states or nations transacting business in this state."
Volume 6, chapter 181, sections 3, 3A, Annotated Laws of Massachusetts, read as follows:
"3. Commissioner to Be Appointed Attorney for Service of Process.  Every foreign corporation, which does business in this commonwealth * * * shall, before doing business in this commonwealth, in writing appoint the commissioner and his successor in office to be its true and lawful attorney upon whom all lawful processes in any action or proceeding against it may be served, and in such writing shall agree that any lawful process against it which is served on said attorney shall be of the same legal force and validity as if served on the corporation * * *."
"3A. Certain Foreign Corporations Failing to Register to Be Deemed to Have Appointed Commissioner Attorney for Service of *55 Process.  Any such corporation which does business in this commonwealth without complying with the provisions of section three, including a corporation as to which the commissioner is required by section six to refuse appointment as attorney for service, shall, without affecting any penalty, liability or disability imposed by section five, be deemed and held, in relation to any cause of action or proceeding arising out of such business, to have appointed the commissioner and his successor in office to be its true and lawful attorney, and any process in any such action or proceeding against it served upon the commissioner or his successor in office shall be of the same legal force and validity as if served on such corporation."
The New Jersey statute provides as above noted for reciprocal "taxes, fines, penalties, licenses, fees, obligations and requirements of whatever kind." (Italics mine.)
Applying the ejusdem generis theory of statutory construction to this section, it becomes apparent that the words "obligations and requirements" do not include an authorization to effectuate service upon a corporation by serving the Secretary of State of New Jersey. The specific words preceding these latter general words must be read to limit the effect of such general words to matters of a nature similar to the former. The statute is penal in nature. An implied authority for service cannot be read in the same sense.
The court, in In re Armour's Estate, 11 N.J. 257, at page 273 (1953), described the applicable rule as follows:
"* * * ejusdem generis, embodying the principle grounded in grammar, logic and reason that associated words and phrases may be looked to for the significance of doubtful words, and where general words follow particular words, in an enumeration describing the subject, the general words are construed to embrace only objects similar in nature to those enumerated by the antecedent specific words."
In Ford Motor Co. v. N.J. Dept. of Labor and Industry, 5 N.J. 494, at page 502 (1950), the court said:
"Ordinarily, the coupling of words denotes an intention that they shall be understood in the same general sense. The natural, ordinary and general meaning of terms and expressions may be limited, qualified and specialized by those in immediate association. Words of general and specific import take color from each other when associated together, and thus the word of general significance is modified *56 by its associates of restricted sense. The general word is qualified by the particular word. Jersey Central Power and Light Company v. State Board of Tax Appeals, 131 N.J.L. 565 (E. & A. 1944). The principle is expressed in the doctrine of noscitur a sociis and the variant rule of ejusdem generis. A word is known from its associates."
See also Salomon v. Jersey City, 12 N.J. 379 (1953); State v. Mundet Cork Corp., 8 N.J. 359 (1952); Edwards v. Mayor, etc., of Borough of Moonachie, 3 N.J. 17 (1949).
Service upon the Secretary of State upon this theory is as well ineffectual and invalid.
Insofar as service upon the Commissioner of Banking and Insurance is concerned, N.J.S. 2A:15-31 provides, in part, as follows:
"Process may be served upon the commissioner of banking and insurance in any civil action brought in any court of this state against * * *
d. any banking, saving, trust, guaranty, safe deposit, indemnity, mortgage, investment, building and loan corporation or association organized under the laws of another state or a foreign country."
N.J.S.A. 17:16A-1 reads as follows:
"As used in this chapter
a. `Investment company' means any corporation, foreign or domestic, any partnership or any individual which engages principally in an investment business as defined in this section, but this chapter shall not be construed to affect any corporation, partnership or individual, other than an investment company, to which a certificate of authority to do business has been issued in accordance with, may be issued on compliance with, or the issue of which is prohibited by the provisions of any other chapter of this Title;

* * * * * * * *
c. `Investment business' means the business of making, issuing, or guaranteeing investment contracts, but does not include the business of any mortgage guaranty corporation, bank, trust company or other corporation of this State incorporated under any general or special law which makes insurance against, or guarantees against, loss by reason of nonpayment of principal or interest on bonds and mortgages, or any corporation authorized to do a life insurance business in this State."
N.J.S. 2A:15-31, in referring to "investment" corporations, must be read in the light of N.J.S.A. 17:16A-1. *57 These statutes are in pari materia and must therefore be read and construed together in order to effectuate the general legislative policy. The word "investment" must be deemed to have been used in the sense as defined in the latter statute. Miller v. Board of Chosen Freeholders of Hudson County, 10 N.J. 398 (1952); Maritime Petroleum Corp. v. Jersey City, 1 N.J. 287 (1949); Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72 (1953).
In view of the affidavit of the defendant and in the absence of any contraverting affidavit of the plaintiffs, it is here held that the defendant is not an "investment" corporation as was contemplated in N.J.S. 2A:15-31. The service upon the commissioner of banking and insurance is therefore as well ineffectual and invalid, and defendant's motion to quash will be granted.
Judgment will be entered accordingly.